# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                      Plaintiff,<br><br>v.<br><br>TRIANGLE MEDIA CORPORATION;<br>JASPER RAIN MARKETING LLC;<br>HARDWIRE INTERACTIVE INC.; and<br>BRIAN PHILLIPS,<br><br>                      Defendants. | Case No.: 18cv1388-MMA (NLS)<br><br>**ORDER DENYING DEFENDANT HARDWIRE INTERACTIVE INC.'S MOTION TO MODIFY TEMPORARY RESTRAINING ORDER**<br><br>[Doc. No. 26] |

On June 25, 2018, Plaintiff the Federal Trade Commission ("Plaintiff" or "FTC") filed a complaint against Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, Hardwire Interactive Inc., and Brian Phillips, alleging violations of Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c). Doc. No. 1 ("Compl."). Also on June 25, 2018, Plaintiff filed a motion for a temporary restraining order ("TRO"). Doc. No. 5. On June 29, 2018, the Court granted Plaintiff's motion for a TRO. Doc. No. 11. On July 6, 2018, the parties filed a joint motion to extend the TRO. Doc. No. 19. The Court granted the joint motion, and set a hearing on Plaintiff's motion

for a preliminary injunction for August 9, 2018. Doc. No. 22. On July 9, 2018, Defendant Hardwire Interactive Inc. ("Hardwire") filed the instant motion to modify the TRO. Doc. No. 26 ("Mtn."). The FTC has opposed the motion. Doc. No. 28 ("Oppo."). For the reasons stated below, the Court **DENIES** Hardwire's motion.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 65(b)(4), Hardwire moves to modify the TRO because "the FTC cannot show . . . any likelihood of success on the merits of its claims under the FTC Act or any of the other federal statutes under which it sues because those statutes do not and cannot reach Hardwire's non-U.S. customer transactions." Mtn. at 14; Fed. R. Civ. P. 65(b)(4). Specifically, Hardwire seeks an order from the Court "[p]ermitting Nobelbiz to reactivate Hardwire's non-U.S. customer service phone lines . . . and precluding the receiver from interfering with that customer service function for non-U.S. customers." Mtn. at 5. Alternatively, Hardwire requests the receiver "cause a voice message to be played to non-U.S. customers who call the now de-activated non-U.S. customer service lines directing them to contact Hardwire on alternative phone numbers, websites and email addresses designated by Hardwire for customer service inquiries, and precluding the receiver from interfering with that customer service function for non-U.S. customers." *Id.* Hardwire's motion is based on two arguments: (1) the FTC will not prevail on the merits as to Hardwire's foreign conduct because that conduct is not governed by the FTC Act, ROSCA, or EFTA; and (2) the FTC failed to properly serve it with the summons, complaint, and TRO. *See id.* at 14-17.

1. ***Foreign Conduct Under the FTC Act, ROSCA, and EFTA***

Hardwire asserts that neither the FTC Act, ROSCA, nor EFTA permit the FTC to reach Hardwire's foreign conduct. Mtn. at 14-15. As noted by Hardwire, "[t]he jurisdictional reach of all three statutes under which the FTC sues is governed by the scope of Section 5 of the FTC Act." *Id.* at 14. Section 5(a) of the FTC Act provides, in relevant part:

> (1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.
> (2) The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations, . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.
> …
> (4)(A) For purposes of [this section], the term 'unfair or deceptive acts or practices' includes such acts or practices involving foreign commerce that –
>> (i) cause or are likely to cause reasonably foreseeable injury within the United States; or
>> (ii) involve material conduct occurring within the United States.

15 U.S.C. § 45(a).

Hardwire asserts that its foreign conduct has neither caused nor is likely to cause reasonably foreseeable injury within the United States. Mtn. at 15. In support, Hardwire explains that "all of the FTC's consumer declarations are either from U.S. consumers or do not specify where the consumer declarant is from, and all of the FTC's remaining evidence relates only to domestic consumers." *Id.* (internal citation omitted). The FTC counters that "the numerous consumer declarations submitted in support of the TRO, and through evidence of investigator purchases, [demonstrates] that Hardwire's U.S.-based practices have caused and are likely to cause injury in the United States." Oppo. at 19.

In June of 2018 alone, Hardwire billed $503,022.54 in U.S. dollar transactions. Doc. No. 26-2 ("Keer Decl."), Exhibit A. In the last six months, Hardwire has billed more than $12 million in U.S. dollar consumer transactions.[1] Oppo. at 20. While Hardwire contends this is a *de minimis* amount in connection to the amount billed in foreign currency, Mtn. at 8-9, the FTC contends this only shows that consumers are being charged in a foreign currency and that "there is good reason to believe that many of these

---

[1] Hardwire billed $4,058,677.72 in January 2018, $3,175,671.93 in February 2018, $2,183,443.80 in March 2018, $1,448,938.10 in April 2018, $862,407.14 in May 2018, and $503,022.54 in June 2018. Keer Decl., Exhibits A-B. This totals $12,232,161.20 from January to June 2018. *See id.*

consumers whom Defendants have charged in foreign currency nevertheless reside in the United States." Oppo. at 21. In support, the FTC refers to various offers marketed as "available to US residents only." Doc. No. 5-3 ("McKenney TRO Decl."), Attachment I. The FTC also refers to undercover purchases made by an FTC investigator wherein he incurred "foreign currency fees." McKenney TRO Decl., ¶¶ 53, 74. As a result, the amounts billed in foreign currency are reasonably likely to have been paid by United States customers. *See* Oppo. at 21. Even if, as Hardwire contends, 93% of its business is based on non-U.S. customer transactions, the fraudulent conduct alleged in the Complaint would be occurring abroad, such that "it is 'reasonably foreseeable' that unaddressed fraud will harm U.S. consumers."[2] *FTC v. Western Union Co.*, 579 Fed. App'x 55, 56 (2d Cir. 2014) (citing 15 U.S.C. § 45(a)(4)(A)(i)).

Accordingly, the Court finds that the FTC has demonstrated a likelihood of success on the merits with respect to Hardwire's foreign conduct causing or likelihood of causing reasonably foreseeable injury within the United States. *See* 15 U.S.C. § 45(a)(4)(A)(i). The Court notes that the FTC need only show either that Hardwire's foreign conduct causes or is likely to cause reasonably foreseeable injury within the United States or that it involves material conduct occurring within the United States. 15 U.S.C. § 45(a)(4)(A). As such, the Court will not conduct a detailed analysis of Hardwire's material conduct within the United States. However, the Court also finds that the FTC has demonstrated it is likely to succeed on the merits of its claim that Hardwire's foreign commerce involves material conduct occurring within the United States. For example, Hardwire's domain registrars, hosts, online marketers, telecommunications providers, payment gateways, customer service providers, call centers, and call-monitoring services are in the United States. See McKenney TRO Decl., ¶¶ 11-126, 132-52, Attachments I, R; Doc. No. 5-1

---

[2] For this reason, the Court is unpersuaded by Hardwire's argument that the equities strongly favor allow modification of the TRO. *See* Mtn. at 17.

("Consumer Decls."); Doc. No. 28-1 ("McKenney Supp. Decl."), ¶¶ 3-4, 17-22, Attachments G, J, K, L.

### 2. *Service of Summons, Complaint, and the TRO*

Hardwire next argues that the TRO "does not even apply to Hardwire" because it received only email service of the TRO before service of process was effectuated pursuant to British of Virgin Islands law or the Hague Convention. Mtn. at 18. As the FTC points out, Federal Rule of Civil Procedure 65(d)(2) provides that TROs bind parties who receive actual notice of the TRO by personal service or otherwise. Oppo. at 23; Fed. R. Civ. P. 65(d)(2)(A). Hardwire is a party to this action and has received actual notice of the TRO. Mtn. at 18 (indicating Hardwire received the TRO via email). Further, Hardwire is bound by the TRO even if service of process has not yet been effectuated. *See Verified Nutrition, LLC v. Sclar*, No. 2:17-cv-07499-ODW (RAO), 2017 WL 4785948, at *5 (C.D. Cal. Oct. 23, 2017) (citing *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012)); *see also* Fed. R. Civ. P. 65. Accordingly, the TRO applies to Hardwire.[3]

## CONCLUSION

For the reasons stated above, the Court **DENIES** Hardwire's motion to modify the TRO.

**IT IS SO ORDERED**.

Dated: July 17, 2018

Hon. Michael M. Anello
United States District Judge

---

[3] Hardwire also indicates it "will be briefing [its personal jurisdiction arguments] with the Court when it responds to the FTC's TRO motion in full." Mtn. at 18. Accordingly, the Court does not address personal jurisdiction.