Andrew W. Robertson (SBN 62541)
arobertson@mcnamarallp.com
Edward Chang (SBN 268204)
echang@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Court-Appointed Receiver
Thomas W. McNamara*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:18-cv-01388-LAB-LL |
| Plaintiff, | **RECEIVER'S INTERIM STATUS REPORT** |
| v. | |
| TRIANGLE MEDIA CORPORATION, a Delaware corporation, also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs; JASPER RAIN MARKETING LLC, a California limited liability company, also doing business as Cranium Power and Phenom Health; HARDWIRE INTERACTIVE INC., a British Virgin Islands corporation, also doing business as Phenom Health, Beauty and Truth, and E-Cigs; and BRIAN PHILLIPS, individually and as an officer of Triangle Media Corporation, | JUDGE:   Hon. Larry Alan Burns<br>CTRM:    14A |
| Defendants. | |

# RECEIVER'S INTERIM STATUS REPORT

## I. INTRODUCTION

On June 29, 2018, this Court entered a Temporary Restraining Order with Asset Freeze and appointed Thomas W. McNamara as Temporary Receiver of the Receivership Entities (ECF No. 11) ("TRO").[1] The Receiver filed his Preliminary Report on July 16, 2018 (ECF No. 30) and Declaration on August 6, 2018 (ECF No. 59), which recounted in detail the initial implementation of the receivership, summarized Defendants' operations and finances, and documented his conclusions that the business could not be operated lawfully and profitably going forward. A hearing on the request for Preliminary Injunction hearing was held on August 9, 2018. Afterwards, the Court entered a Preliminary Injunction, extended to the same Receivership Entities identified in the TRO, and appointed Mr. McNamara the Permanent Receiver ("Receiver") (ECF No. 75).

Since the entry of Preliminary Injunction, the Receiver has vacated office space, worked to secure electronic records held by a third-party, and coordinated with the parties as needed.[2] However, the Receiver's primary focus has been the recovery of Defendants' assets in the U.S. and internationally. Thus far, more than $1 million has been received from U.S. payment processors, and we are making efforts to recover funds held by foreign payment processors.

---

[1] Receivership Entities are defined to include Triangle Media Corporation (d/b/a Triangle CRM, Phenom Health, Beauty and Truth and E-Cigs), Jasper Rain Marketing LLC (d/b/a Cranium Power and Phenom Health), Hardwire Interactive (d/b/a Phenom Health, Beauty and Truth, and E-Cigs) and each of their subsidiaries, affiliates, successors, and assigns, "as well as any other entity that has conducted any business related to Defendants' marketing of negative option offers, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant." TRO, Definition N, page 8.

[2] By the end of August 2018, we vacated the Tampa location and returned the office space to the landlord. The Tampa business records and computers are now stored in San Diego. Defendants also used Amazon Web Services ("AWS") to host virtual servers and store business records. We are working with AWS to secure Defendants' business records.

## II. SUMMARY OF RECEIVERSHIP ACTIVITIES

### a. Nominee Merchant Accounts

As previously reported, the success of Defendants' business was dependent on the ability to charge consumers' credit cards. In order to do so, Defendants amassed hundreds and hundreds of nominee – or straw owner – merchant accounts in the U.S. and internationally. *See* ECF No. 30 at 12-14; ECF No. 30-12. In turn, Defendants had to orchestrate the establishment of a like number of corporate entities, purportedly owned by the nominees or straw owners. These nominee corporate entities were a necessary first step to opening the nominee merchant accounts.

#### i. U.S. Payment Processors

Defendants established hundreds of U.S. corporate entities over the life of the scheme. At the time of this lawsuit, there were 33 U.S. corporate entities with at least 75 nominee merchant accounts at U.S. payment processors (many of which had been closed due to chargebacks). To date, we recovered more than $1 million from nominee merchant accounts in the U.S. – the bulk of which came from payment processor Priority Payment Systems ($1,025,796.51).

Priority Payment Systems identified 37 nominee merchant accounts, all of which were closed by early February 2018. Payment processors may hold reserve balances to protect themselves against returns or chargebacks from consumers even after merchant accounts are closed. Typically, payment processors hold the reserve balances for 180 days post-closing of accounts. Since the nominee merchant accounts at Priority Payment Systems were closed in early February 2018, we requested Priority Payment Systems release the reserve balances to the Receiver. By late September 2018, we received $1,025,796.51 from Priority Payment Systems.

Paysafe Payment Processing Solutions, LLC ("Paysafe US") reported 37 nominee merchant accounts, of which 24 accounts held $253,665.80 in reserves

1  as of late September 2018.  Of the 24 merchant accounts with reserve balances,
2  15 accounts were closed by late April, so the 180-day hold on these reserve
3  balances expired in late October.  On November 9, we received $139,586.13 from
4  Paysafe US for the released reserve balances.  We expect the remaining reserve
5  balances ($112,651.58 at present) will be available for release in late January 2019.
6  　　　　Other U.S. payment processors used by Defendants have represented they
7  hold no additional reserve balances at this point.  We will continue to monitor the
8  situation and pursue any additional funds owed to nominee merchant accounts.

　　　　**ii.　　　International Payment Processors**

10  　　　　For the international nominee merchant accounts, Defendants worked
11  closely with a middleman, independent sales organization Processing.com to
12  acquire a stable of international merchant accounts.  At the time of this lawsuit,
13  there were roughly two hundred foreign nominee corporate entities registered in
14  U.K., Bulgaria, and France.  Each nominee entity, in turn, had several merchant
15  accounts.  As a result, there were nearly 600 nominee merchant accounts
16  processing customer transactions in U.S. dollars (315 accounts), euros
17  (145 accounts), sterling pounds (124 accounts), Norwegian kroner (1 account), and
18  Danish kroner (1 account).
19  　　　　Upon receipt of the TRO, Processing.com notified the international payment
20  processors on July 2, 2018.  These payment processors, Borgun, CashFlows
21  Europe Limited ("CashFlows"), E-Comprocessing ("ECP"), Kalixa Accept Ltd.
22  ("Kalixa"), Paysafe Financial Services Limited ("Paysafe UK"), and Transact
23  Europe, were instructed to pause transactions settlements and hold funds for the
24  nominee merchant accounts.  On July 10, Processing.com provided copies of the
25  TRO to Borgun, CashFlows, Kalixa, and Paysafe UK.[3]
26  ///

---

[3] ECP has seven merchant accounts, of which only one has a small positive balance of approximately $100.

In late July 2018, Processing.com provided documents to the Receiver. Based on these documents, Borgun, CashFlows, Kalixa and Paysafe UK are holding significant amounts of money for the nominee merchant accounts:[4]

| Processor | U.S. Dollars | Euros | Sterling Pounds | Norwegian Kroner |
|---|---|---|---|---|
| Borgun | $287,035.00 | €713,780.00 | | |
| Cashflows | $1,235,021.45 | €442,873.15 | £176,761.12 | |
| Kalixa | $37,449.64 | €727,710.66 | £31,500.90 | kr 471,586.04 |
| Paysafe UK | $551,231.09 | | | |
| Transact Europe | $57,046.14 | €880,923.91 | £446,932.64 | |
| Total | $2,167,783.32 | €2,765,287.72 | £655,194.66 | kr 471,586.04 |

Processing.com forwarded our request that the international payment processors release the funds to the Receiver. We have yet to receive any funds. We have instituted direct contact with Borgun, CashFlows, Kalixa, and Paysafe UK and will continue to pursue the funds.

### b.  Foreign Nominee Entities

In late August 2018, Defendant Hardwire Interactive Inc. ("Hardwire") contacted the Receiver and requested that he pay approximately $75,000 for corporate services and renewals related to 16 U.K. entities – £50,000 to R & L Partnership ("R&L") and £8,000 to Processing.com. Hardwire reported that the entities must remain in good standing in order to recover reserve funds from payment processors. Upon further review, we discovered the directors of these 16 U.K. entities resigned en masse on August 2, 2018.

///

---

[4] Some merchant accounts, including the merchant account that processed Danish kroner, have a negative balance. These accounts were excluded from the above summary.

1 In the U.K., Companies House, U.K.'s registrar of companies, may strike off (i.e., dissolve) a company if it is not carrying on business, not in operation, has no directors, or has not made certain requisite filings. However, before Companies House strikes off a company, it is required to send notice to the company and publish notice in the newspaper stating its intention to strike the company from the register. Provided there is no response, Companies House will strike off the company two months after publication in the newspaper. For these 16 U.K. entities, Companies House started the strike off process on October 23, 2018. The entities may be stricken off the register around December 23.

In order to keep the 16 U.K. entities in good standing, Hardwire reported that R&L has "a network of individuals in Europe who are retained for nominee directorship services" and Processing.com "handles the corporate annual filings." Without a director, Companies House will eventually strike off the 16 U.K. entities. According to Hardwire and based on their counsel's prior experience, to recover reserve funds from payment processors, entities must remain in good standing. Hardwire therefore proposed that the Receiver continue the use of nominee directors (arranged by R&L) for the 16 U.K. entities.

Given our discomfort in continuing the charade of nominee directors, and because we have roughly 60 U.K. entities in which this issue is likely to surface, we engaged U.K. counsel.[5] She contacted Companies House to explain the existence of this lawsuit and the Receiver. Companies House seems receptive to delaying the strike off process, so that the Receivership Entities can remain in good standing and receive the reserve funds held by the international payment processors. The tentative plan, based on the guidance provided by Companies House, is that our U.K. counsel will file an objection to the striking off of the

---

[5] Depending on the response from the international payment processors, we may have to engage Bulgarian and French counsel to keep the approximately 130 Bulgarian and 10 French entities in good standing while we pursue the merchant account funds.

entities on the grounds that they are holding proceeds of Defendants' negative option sales which are subject to the receivership.  U.K. counsel recommends that we file the objection as soon as possible and no later than December 7.  Based on U.K. counsel's conversation with Companies House, she believes the objection will stop the striking off process.  To assist U.K. counsel and to prevent Companies House from striking off any U.K. entity that has a nominee merchant account, we may seek an order from the Court specifically identifying each foreign entity as a Receivership Entity.[6]

### c. San Diego Condo

At the time of the lawsuit, Receivership Defendant Flat6 Development LLC ("Flat6") was in escrow to sell its downtown San Diego office condo.  Upon learning of the escrow, we immediately contacted the selling broker and later the escrow agent.  After getting the necessary background information, we reported we had no objection to the sale and confirmed the sales proceeds would be forwarded to a receivership bank account.  After several extensions, the selling broker contacted us to report that the buyer could not complete the transaction.  The broker recommended that Flat6 accept a pending back-up offer.  After getting additional background from the broker, the Receiver indicated that he had no objection to proceeding with the back-up offer.  That sale should close by the end of January 2019.[7]

## III. RECEIVERSHIP ACCOUNTING

Attached as Exhibit A is a Receipts and Disbursements Summary from appointment on June 29, 2018 through November 9, 2018.  During this time

---

[6] We attempted to obtain such an order through a stipulation, but Defendants refused the stipulation.  Accordingly, we anticipate filing a motion.

[7] The original offer was for $520,000.  The back-up offer is for $40,000 less, $480,000.  The broker represented that the $480,000 sales price was reasonable and at market, and that the purchaser is known and will complete the purchase in short order.

period, receipts were $2,910,303.37, primarily comprised of transfers from the Receivership Entities' frozen bank accounts ($1,190,170.36), Receivership Entities' merchant accounts ($1,170,293.64), Hardwire's Hong Kong bank account ($549,839.37), and the sales proceeds from the sale of Defendant Brian Phillips' house ($497,686.49).  Disbursements were $206,643.64, primarily comprised of professional fees approved by Order on September 25, 2018 (ECF No. 85) ($81,909.39 for Receiver's fees and costs; $61,166.39 for legal fees and costs; $15,741.36 for computer forensics expert and IT consultant; and $8,167.50 for forensic accountant fees), $39,200.00 released to Defendant Brian Phillips for living expenses as agreed upon between the FTC and Defendant Brian Phillips, and $459 for private investigators.  In aggregate, the receivership bank accounts have a current balance of $3,204,603.30.

Dated:  November 9, 2018　　　　　　　MCNAMARA SMITH LLP

By:   /s/ Edward Chang
　　　Edward Chang
　　　*Attorneys for Court-Appointed Receiver,*
　　　*Thomas W. McNamara*
　　　Email: echang@mcnamarallp.com

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of November, 2018, the foregoing document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

**VIA CM/ECF**
Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
230 South Dearborn, Suite 3030
Chicago, Illinois 60604
Tel.:   312-960-5623 (Gordon)
Tel.:   312-960-5596 (Wernz)
sgordon@ftc.gov
mwernz@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

**VIA CM/ECF**
Adam L. Braverman
United States Attorney
Rebecca G. Church
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel.:   619-546-7701/7721
Fax:   619-546-7751
rebecca.church@usdoj.gov
*Attorneys for Plaintiff Federal Trade Commission*

**VIA CM/ECF**
Frederick K. Taylor
Matthew B. Shields
Nicholas S. Kawuka
Procopio Cory Hargreaves
  and Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101-4469
Tel.:   619-238-1900
Fax:   619-235-0398
fkt@procopio.com
matthew.shields@procopio.com
nka@procopio.com
*Attorneys for Defendants Triangle Media Corporation; Jasper Rain Marketing, LLC; and Brian Phillips*

**VIA CM/ECF**
Ari N. Rothman
Witt W. Chang
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel.:   310-229-9900
Fax:   310-229-9901
anrothman@venable.com
wchang@venable.com
*Attorneys for Defendant Hardwire Interactive Inc.*

**VIA CM/ECF**
Gerald S. Sachs / Stephen R. Freeland
Venable LLP
600 Massachusetts Ave. NW
Washington, DC 20004
Tel.:   202-344-4000
Fax:   202-344-8300
gssachs@venable.com
srfreeland@venable.com
*Attorneys for Defendant Hardwire Interactive Inc.*

  /s/ Edward Chang
Edward Chang
*Attorneys for Court-Appointed Receiver, Thomas W. McNamara*