JONATHAN W. WARE
DC Bar No. 989414; VA Bar No. 77443
Federal Trade Commission
600 Pennsylvania Avenue NW CC-9528
Washington, DC 20580
Tel: (202) 326-2726; Fax: (202) 326-3197
jware1@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No. 18-cv-1388-LAB-LL |
| Plaintiff, | Judge: Hon. Larry A. Burns |
| v. | |
| **TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC.; GLOBAL NORTHERN TRADING LIMITED; BRIAN PHILLIPS; and DEVIN KEER,** | **PLAINTIFF FTC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO INTERVENE BY NON-PARTY WELLS FARGO** |
| Defendants. | Date:  January 24, 2022 Time:  11:30 A.M. Courtroom:  14A |

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES ...............................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...........................1

LEGAL ARGUMENT .........................................................................2

I.   WELLS FARGO OMITS RELEVANT FACTS REGARDING THE
     HISTORY OF THIS LITIGATION. .............................................2

     A.   The FTC's Suit Here; ROSCA (the Statute for Monetary Relief
          that Wells Fargo Discounts); and the Parts of the Injunctions
          that Wells Fargo Omits and Describes Incorrectly. ..............3

     B.   The Apex Action. .............................................................5

     C.   Post-*AMG*, Receivers in FTC Cases *Like This One* (with
          ROSCA or Section 19 Claims) Carry On. ............................6

II.  WELLS FARGO LACKS STANDING TO INTERVENE.........................8

III. WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE
     AS OF RIGHT. .........................................................................10

     A.   The Motion Is Untimely. .................................................10

          1.   The proceeding is closed and Wells Fargo knew, or
               should have known, its interests were at risk in 2019. ....11

          2.   Wells Fargo's delay prejudices the parties. ....................15

          3.   Wells Fargo gives no reason for its four-month delay
               under its theory, and an inadequate one for its actual two-
               year delay. ....................................................................17

     B.   Wells Fargo Lacks a Significantly Protectable Interest. ...........19

     C.   Disposition of this Case Will Not Impair Wells Fargo's Ability
          to Protect Its Interest........................................................20

     D.   Wells Fargo's Interests Are Adequately Protected ...............21

IV.  WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE
     BY PERMISSION. .....................................................................23

     A.   The Motion Is Untimely Under the "More Strict[]" Standard. ..........23

     B.   The Parties Would Be Prejudiced By Intervention..............24

     C.   Other Factors Weigh Against Intervention ........................24

CONCLUSION ....................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Alaniz v. Tillie Lewis Foods,* 572 F.2d 657 (9th Cir. 1978) ...................... 10, 11, 24

*Am. Int'l Specialty Lines Ins. Co. v. United States*, 2012 WL 12897865 (C.D. Cal. Jan. 30, 2012) ...........................................................18

*AMG Cap. Mgmt., LLC v. FTC,* 141 S. Ct. 1341 (2021)................................. passim

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113 (9th Cir. 2002) ......................................................16

*Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*, 2017 WL 4769439 (C.D. Cal. 2017) ......................................................15

*Calvert v. Huckins*, 109 F.3d 636 (9th Cir. 1997) ................................. 10, 15, 16, 24

*CAMOFI Master LDC v. Assoc. Third Party Admins.*, 2018 WL 839134 (N.D. Cal. Feb. 13, 2018) ......................................................20

*CFTC v. Co Petro Mktg. Group, Inc.*, 680 F.2d 573 (9th Cir. 1982) ......................8

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) .........................................8

*Cooper v. Newsom*, 13 F.4th 857 (9th Cir. 2021) ........................................ 10, 21, 23

*Cotton v. Wells Fargo Bank N.A.*, 2011 WL 13227816 (C.D. Cal. Feb. 22, 2011) ......................................................13

*Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) .........................................16

*Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939 (9th Cir. 2021) ......................................................9

*FTC v. AH Media Grp., LLC,* 2021 WL 5053092 (N.D. Cal. Nov. 1, 2021) ......................................................7, 8

*FTC v. Am. Future Sys., Inc.*, 2021 WL 3185777 (E.D. Pa. July 26, 2021).............6

*FTC v. Cardiff*, 2020 WL 766336 (C.D. Cal. 2020), *aff'd*, 830 F. App'x 844 (9th Cir. 2020) ......................................................18

*FTC v. Cardiff*, 2021 WL 3616071 (C.D. Cal. June 29, 2021) ...................... 6, 7, 22

*FTC v. Credit Bureau Ctr., LLC*, 2021 WL 4146884 (N.D. Ill. Sept. 13, 2021) ...................................................... 7, 8, 10, 22

*FTC v. First Cap. Consumer Membership Servs., Inc.*, 206 F.R.D. 358 (W.D.N.Y. 2001) ......................................................21

*FTC v. Ivy Cap., Inc.*, 2011 WL 2470584 (D. Nev. June 20, 2011).......................22

*FTC v. John Beck Amazing Profits, LLC*, 2021 WL 4313101 (C.D. Cal. Aug. 19, 2021)...............................................................................8, 22

*FTC v. Johnson*, 800 F.3d 448 (8th Cir. 2015).........................................21

*FTC v. Nat'l Urological Grp., Inc.*, et al., 2021 WL 5774177 (N.D. Ga. Sept. 30, 2021).........................................................................8

*FTC v. Neora LLC*, 2021 WL 3398153 (N.D. Tex. Aug. 2, 2021) .........................6

F*TC v. Noland*, 2021 WL 1237206 (D. Ariz. Apr. 2, 2021)..................................21

*FTC v. Noland*, 2021 WL 3290461 (D. Ariz. Aug. 2, 2021)................................18

*FTC v. Noland,* 2021 WL 4318466 (D. Ariz. Sept. 23, 2021) ...........................6, 8

*FTC v. On Point Glob. LLC*, 2020 WL 5819809 (S.D. Fla. Sept. 30, 2020) ..........22

*FTC v. QYK Brands LLC,* 2021 WL 5707477 (C.D. Cal. Nov. 30, 2021)...............6

*FTC v. Simple Health Plans LLC,* 2021 WL 4050819 (S.D. Fla. Sept. 5, 2021).....................................................................................6, 7

*FTC v. SuperTherm Inc.*, 2021 WL 3419035 (D. Ariz. Aug. 5, 2021) ...............6, 22

*FTC v. Vyera Pharms., LLC*, 2021 WL 4392481 (S.D.N.Y. Sept. 24, 2021).......................................................................................22

*FTC v. Zurixx, LLC*, 2021 WL 3510804 (D. Utah Aug. 10, 2021) .........................18

*FTC v. Zurixx, LLC*, 2021 WL 5179139 (D. Utah Nov. 8, 2021) ...........................6

*Hawaii v. U.S. Dep't of Educ.*, 2010 WL 346445 (D. Haw. Jan. 29, 2010)............16

*Hawaii-Pac. Venture Cap. Corp. v. Rothbard*, 564 F.2d 1343 (9th Cir. 1977).....................................................................................21

*Herb Reed Enters., Inc. v. Bennett*, 2012 WL 5989632 (D. Nev. Nov. 29, 2012)................................................................................ 11, 15

*Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955 (5th Cir. 2012) .............................13

*League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997).... 10, 17, 24

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 264 F.2d 199 (9th Cir. 1959).......................................................................................4

*Mineworkers' Pension Scheme v. First Solar Inc.*, 722 F. App'x 644 (9th Cir. 2018).................................................................................24

*Montgomery v. United States*, 2012 WL 124854 (S.D. Cal. Jan. 17, 2012)............11

Case No. 18-cv-1388-LAB-LL
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

*Oregon Prescr. Drug Monitoring Program v. DEA*, 860 F.3d 1228 (9th Cir. 2017)....................................................................................8

*Perlman v. Bank of Am., N.A.*, 561 F. App'x 810 (11th Cir. 2014)......................13

*Perlman v. Wells Fargo Bank*, N.A., 559 F. App'x 988 (11th Cir. 2014) .............13

*Perry v. Schwarzenegger*, 630 F.3d 898 (9th Cir. 2011).................................. 23, 24

*San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854 (S.D. Cal. 2018) ...........................................................................................9, 19

*SEC v. First Choice Mgmt. Servs., Inc.*, 767 F.3d 709 (7th Cir. 2014)..................17

*SEC v. Heritage Trust Co.*, 402 F. Supp. 744 (D. Ariz. 1975) .................................8

*SEC v. Homestead Properties, L.P.*, 2009 WL5173685 (C.D. Cal. Dec. 18, 2009) ...............................................................................................8

*Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843 (9th Cir. 2016) ......... passim

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)................20

*Thompson v. Wolverine Servs., LLC*, 2021 WL 827605 (N.D. Cal. Mar. 4, 2021)...............................................................................................23

*Town of Chester v. Laroe Estates*, 137 S.Ct. 1645 (2017) .........................................8

*Trunk v. City of San Diego*, 2012 WL 6213712 (S.D. Cal. Dec. 12, 2012) ..... 15, 21

*U.S. v. Alisal Water,* 370 F.3d 915 (9th Cir. 2004) .................................... 11, 12, 16

*United States v. Lande*, 2008 WL 11490112 (D. Mont. Jan. 17, 2008) ........... 11, 16

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990)...........................................11

*United States v. Petters*, 2009 WL 1174668 (D. Minn. Apr. 29, 2009), *aff'd sub nom. United States v. Ritchie Special Credit Invs., Ltd*., 620 F.3d 824 (8th Cir. 2010) .................................................................18

*Wells Fargo Fraudulent Acct. Opening Litig.,* 282 F. Supp. 3d 1360 (U.S. Jud. Pan. Mult. Lit. 2017)..............................................................12

*Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316 (M.D. Fla. 2015), *aff'd* 677 F. App'x 573 (11th Cir. 2017)..............................................13

**Statutes**

15 U.S.C. § 1693(o) ..................................................................................3

15 U.S.C. § 1693e(a)..............................................................................3, 5

15 U.S.C. § 45(a) ............................................................................................3, 19

15 U.S.C. § 53(b) ............................................................................................ passim

15 U.S.C. § 57b ......................................................................................... 3, 6, 9

15 U.S.C. § 8403 ...............................................................................................3

15 U.S.C. § 8404 ....................................................................................... 3, 5, 6

**Rules**

Fed. R. Civ. P. 24 ............................................................................................2, 3

Fed. R. Civ. P. 24(a).................................................................................. 10, 20

Fed. R. Civ. P. 24(b).................................................................................. 23, 24

Fed. R. Civ. P. 59(e).............................................................................................10

Fed. R. Civ. P. 60 .................................................................................... 2, 3, 6

Fed. R. Civ. P. 65(d)(1).......................................................................................4

**Treatises**

Clark on Receivers § 329 (3d ed. 1959) .................................................20

Clark on Receivers § 378 (3d ed. 1959) .................................................20

Clark on Receivers § 696 (3d ed. 1959) .................................................20

**Regulations**

12 C.F.R. § 1005.10(b) ...........................................................................................3

Case No. 18-cv-1388-LAB-LL
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

## MEMORANDUM OF POINTS AND AUTHORITIES

Wells Fargo seeks to intervene (Dkt. 153) in this closed case to attack two 30-month-old judgments and re-litigate a motion the Court granted two years ago authorizing the Court's receiver, Thomas McNamara (the "Receiver"), to hire counsel to sue Wells Fargo & Company and Wells Fargo Bank N.A. (together, "Wells Fargo").  This motion comes more than four months after the Receiver sued the bank following months of negotiations, and after the bank fully briefed its motion to dismiss that suit.  Wells Fargo failed to raise there (or here, two years ago) the arguments it belatedly seeks to make if allowed to intervene now.  Its untimely, convoluted, but professed *raison d'être* concerns an April 2021 Supreme Court decision that limited a *Federal Trade Commission* ("FTC") statutory remedy based on the specific language of Section 13(b) of the FTC Act, which *cannot apply to banks* because they are not covered by the FTC Act.  The bank argues *AMG* somehow applies to banks when sued at common law on behalf of private corporations by a court's receiver appointed in an FTC matter.  How the language of Section 13(b) affects a cause of action outside the FTC Act is a mystery.

The FTC brought this case in June 2018, alleging Defendants violated three statutes and a regulation, causing millions of dollars of consumer injury.  The Court entered a TRO (and preliminary injunction) and appointed a receiver, based on Section 13(b) *and a separate statute,* one left untouched by the Supreme Court that still permits monetary relief (facts Wells Fargo tellingly omits).  In May 2019, the Court entered stipulated permanent injunctions and judgments.  These now 30-month-old judgments required Corporate Defendants to surrender *all assets* to the Receiver for liquidation, with the proceeds going to victims.  Those assets included the Corporate Defendants' causes of action against third parties (like Wells Fargo).

The Receiver, who is independent of the FTC and a fiduciary of the Court, uncovered what he believed to be offenses by Wells Fargo.  Specifically, he found Wells Fargo opened more than 150 bank accounts for the Defendants and a related

1

scheme subject to a different FTC action in the Central District of California (the "Apex Action") where he is also receiver.  He alleges Wells Fargo "was providing substantial, knowing assistance" to the defendants and violated state and common laws.  He publicly sought the Court's permission in **October 2019** (following Wells Fargo's long involvement with the case) to hire contingency counsel, which this Court approved in November 2019.

After extensive litigation with the Receiver, Wells Fargo now wants the Court to undo this long history.  It correctly argues that *one* of the statutes *the FTC* sued under, Section 13(b) of the FTC Act, no longer permits *the FTC* to seek monetary relief following the April 22, 2021 decision in *AMG Cap. Mgmt., LLC v. FTC,* 141 S. Ct. 1341 (2021).  It, however, sidesteps the claims and *other statutory basis that still permit monetary relief*.  Those facts—which Wells Fargo omits, describes wrongly, or relegates to a footnote—expose why it lacks grounds to intervene and why its proposed motion must fail.  The Apex Action court, like others, have already held *AMG* is *not* a basis under Rule 60 to undo judgments in cases like this one, counter to what Wells Fargo belatedly advances.  However, even if Wells Fargo obtains what it seeks, that just means the Court vacates an order to hire one particular counsel.  The Receiver could, and presumably would, still sue Wells Fargo on the same claims, just as the Corporate Defendants could.

Finally, even if it did advance viable legal arguments, which it does not, Wells Fargo neither has standing to intervene, nor do they meet the requirements of Rule 24 for either mandatory or permissive intervention.  Intervention would greatly prejudice the FTC, forcing it either to settle the matter again, or to litigate the case in some manner to restore the current *status quo*.

## LEGAL ARGUMENT

## I.   WELLS FARGO OMITS RELEVANT FACTS REGARDING THE HISTORY OF THIS LITIGATION.

Wells Fargo's motion is riddled with misstatements and omissions of both

the history of this case and the relevant law.  Before addressing its failure to meet its burden under Rule 24, it is important to correct the record to place the request in proper context.  Critically, the FTC Act, the FTC's Complaint, and the Court's Preliminary Injunction contain language fatal to Wells Fargo's effort to intervene (as well as its proposed Rule 60 motion, as other courts have held on similar facts).

> **A.    The FTC's Suit Here; ROSCA (the Statute for Monetary Relief that Wells Fargo Discounts); and the Parts of the Injunctions that Wells Fargo Omits and Describes Incorrectly.**

Three and a half years ago, the FTC filed its Complaint (Dkt. 1), Motion, and Memorandum for a Temporary Restraining Order ("TRO"), including appointment of a receiver, setting forth extensive evidence that the Defendants violated the law (Dkt. 5).  Defendants duped consumers into "free" or low-cost trial products online, then charged them monthly, or considerably more, without consent.  Dkt. 1 at ¶¶ 12-34.  The Complaint detailed how they violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), **Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403,** Section 907(a) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and 12 C.F.R. § 1005.10(b).  *See* Dkt. 1 at ¶¶ 1, 35-64.  The Complaint did not name Wells Fargo, and, **by statute, the FTC cannot sue banks**.  *See* 15 U.S.C. § 45(a)(2).

The FTC sought a permanent injunction and monetary relief under three statutes—Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), **Section 5 of ROSCA, 15 U.S.C. § 8404,** and Section 918(c) of EFTA, 15 U.S.C. § 1693(o).  Dkt. 1 at ¶¶ 1, 4, 5, 40, 43, 46, 49, 53-54, 56, 66-67 and pp. 24-26.[1]

The TRO and Preliminary Injunction.  The Court granted both a TRO and

---

[1] Under ROSCA, certain marketing practices, like those in this case, are prohibited.  *See* 15 U.S.C. § 8403.  Those acts "shall be treated as a violation of a rule" under the FTC Act, and anyone who violates ROSCA "shall be subject to the penalties" (and limits) in the FTC Act.  *Id.* § 8404.  Section 19 of the FTC Act provides for "the refund of money" for violating an FTC rule.  15 U.S.C. § 57b(b).

Preliminary Injunction.  As required by Rule 65,[2] in each instance the Court based its "Findings" on violations of the FTC Act, **ROSCA**, and EFTA.  Specifically, the Court found good cause to believe the violations occurred and the FTC was likely to succeed under all three statutes.  Dkts. 11 at 1, 3-5 and 75 at 1-2.  The Court's separate memorandum decision recited the FTC Act, **ROSCA**, and EFTA violations, and explained that the FTC sought monetary relief to redress consumer injury for violations of the FTC Act, **ROSCA**, and the EFTA.  *See* Dkt. 74 at 6-10.  The Court, however, did not analyze the merits of those claims because Defendants "[did] not challenge the [FTC's] likelihood of success on the merits." *Id.* at 10.  Instead, the Court addressed the scope of any injunction under Section 13(b), 15 U.S.C. §53(b)(2), which the Defendants had challenged.  Dkt. 74 at 9-10.

The TRO and Preliminary Injunction appointed a receiver over the Corporate Defendants and their affiliates (the "Receivership Entities") "with full powers of an equity receiver."  Dkt. 11 at 18 (to be "solely the agent of this Court in acting as Receiver under this Order"); Dkt. 75 at 16-17 (to "be accountable directly to this Court").  The Court authorized the Receiver to "[a]ssume full control of Receivership Entities," "[t]ake exclusive custody, control, and possession of all Assets . . . of . . . any Receivership Entity," "manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets," "protect the interests of consumers and creditors who have transacted business with the Receivership Entities," "employ attorneys . . . as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order," "[i]nstitute, compromise, adjust, appear in, intervene in, or become party to such actions or

---

[2] *See* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction and every restraining order must . . .  state the reasons why it issued."); Dkt. 11 at 5 (citing Rule 65); Dkt. 75 at 2 (same); *see also Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 264 F.2d 199, 205, 213 (9th Cir. 1959) (vacating injunction and order appointing receiver for non-compliance with Rule 65).

1   proceedings in state, federal, or foreign courts that the Receiver deems necessary

2   and advisable to preserve or recover the assets of the Receivership Entities, or . . .

3   to carry out the Receiver's mandate under this Order."  Dkt. 75 at 17-19.

4         Tellingly, Wells Fargo's 51 pages of briefing *omits* the Court's express

5   reliance on ROSCA in its TRO and Preliminary Injunction.  Wells Fargo instead

6   mentions "Section 13(b)" ***eighty-five*** times, and "ROSCA" *once*.  In that one

7   instance, it falsely claims: "the Court did not rely on either alleged violation [of

8   ROSCA and EFTA] as a basis for appointing the Receiver."  Dkt. 153-1 at 8 n.3.

9   In fact, the Court's TRO and Preliminary Injunction each appointed the Receiver

10  **based on violations of ROSCA** and EFTA.  Dkt. 11 at 1, 3-5; Dkt. 75 at 1-2.

11        The Permanent Injunctions.  Wells Fargo also ignores the fact that the

12  stipulated orders imposing permanent injunction and judgment again rely on

13  Section 13(b), **Section 5 of ROSCA**, and Section 918(c) of EFTA.  Dkts. 126 at 1-

14  2 and 127 at 1-2.  Further, the judgments require the Receiver to "[c]omplete the

15  process for taking custody, control, and possession of all assets of [the Corporate

16  Defendants]," "[c]omplete the liquidation of all [their] assets," and "[d]istribute to

17  Plaintiff any remaining liquid assets."  Dkt. 126 at 16-17; Dkt. 127 at 15-16.

18  Defendants agreed to "relinquish dominion and all legal and equitable right, title,

19  and interest in all assets . . . held by the Receiver."  Dkt. 126 at 13; Dkt. 127 at 12.

20  The Court ordered all liquidated assets to be provided to the FTC to redress

21  consumers and for related expenses.  Dkt. 126 at 14-15; Dkt. 127 at 13.

22        Monetizing the Corporate Defendants' claims against Wells Fargo are thus

23  an integral part of their respective judgments.  On October 22, 2019, the Receiver

24  sought approval to hire a specific firm to carry that out, Dkt. 136, which the Court

25  granted and closed the case, Dkt. 142.

26        **B.    The Apex Action.**

27        In November 2018, the FTC began the Apex Action, a similar suit against

28  other defendants.  *See* Decl. of Logan D. Smith ¶ 35.  Both cases proceeded to

judgments against all defendants in 2019 (save for two defendants who settled in January 2020).  *Id.* ¶ 36.  As in this action, the FTC sought monetary relief against the Apex defendants under both Section 13(b) of the FTC Act and ROSCA, and obtained a receiver.  Decl.  *Id.* ¶¶ 4, 35.  The complaint, TRO, and injunctions there cited Section 19, 15 U.S.C. § 57b, in addition to ROSCA.  *Id.* ¶¶ 35-36.  Wells Fargo omits that on September 3, 2021, the Apex Action court denied a motion by certain defendants under Rule 60 seeking to undo the Apex judgments based on *AMG* in a similar manner to what Wells Fargo looks to do here.  *Id.* ¶ 39, Ex. C.

## C.   Post-*AMG*, Receivers in FTC Cases *Like This One* (with ROSCA or Section 19 Claims) Carry On.

While *AMG* ended the FTC's ability to obtain monetary relief under Section 13(b) of the FTC Act, it can still obtain monetary relief under ROSCA or Section 19.  Wells Fargo misrepresents *AMG* and post-*AMG* law in three ways.

First, Section 19 and ROSCA do *not*, as Wells Fargo misattributes to *AMG,* "require the FTC to first proceed administratively," which it did not do here, to obtain monetary relief.  *See* Dkt. 153-1 at 13 (citing *AMG,* 141 S. Ct. at 1348-49).  Section 19 provides two paths to money relief in federal court: directly, 15 U.S.C. § 57b(a)(1), or, after an administrative process, *id.* § 57b(a)(2).  *AMG*'s discussion of Section 19 is limited to the latter.  *See AMG,* 141 S. Ct. at 1346 and 1348-49 (both citing *only § 57b(a)(2)* "as relevant here").  No district court to handle that question has misread the statute or *AMG* to hold like Wells Fargo seeks here.[3]

---

[3] *See, e.g., FTC v. QYK Brands LLC,* 2021 WL 5707477, at *5-6 (C.D. Cal. Nov. 30, 2021); *FTC v. Zurixx, LLC,* 2021 WL 5179139, at *2-4 (D. Utah Nov. 8, 2021); *FTC v. Noland,* 2021 WL 4318466, at *5 (D. Ariz. Sept. 23, 2021); *FTC v. Simple Health Plans LLC,* 2021 WL 4050819, at *3-4 (S.D. Fla. Sept. 5, 2021); *FTC v. SuperTherm Inc*., 2021 WL 3419035, at *6-7 (D. Ariz. Aug. 5, 2021); *FTC v. Neora LLC*, 2021 WL 3398153, at *5 (N.D. Tex. Aug. 2, 2021); *FTC v. Am. Future Sys., Inc*., 2021 WL 3185777, at *1 n.1 (E.D. Pa. July 26, 2021); *FTC v. Cardiff*, 2021 WL 3616071, at *2 (C.D. Cal. June 29, 2021). Without addressing

Second, Wells Fargo grossly mischaracterizes post-*AMG* case law and the fact the FTC can still obtain money under ROSCA.  It cites the *Cardiff* case twice for the notion such relief is unavailable.  *See* Dkt. 153-1 at 14, 153-2 at 12.  In fact, the *Cardiff* court expressly held, in language Wells Fargo again omits: "Section 19 . . . plainly authorizes the FTC to seek equitable monetary relief to redress consumer injury resulting from ROSCA violations," and "**the change in law [*i.e., AMG*] had *no effect* on the availability of ROSCA Section 19 remedies**." *Cardiff*, 2021 WL 3616071, at *2, *5 (emphasis added).  The decision further explained the FTC can seek monetary damages for ROSCA violations even where, like here, its complaint did not cite Section 19, only ROSCA.  *Id*. at *2-3 (though ultimately denying ROSCA relief on other grounds); *see also Simple Health,* 2021 WL 4050819 at *4 and n.8 (denying *AMG*-based motion to dissolve preliminary injunction that "did not reference § 19" because court instead had based it on a violation of an FTC rule, akin to ROSCA); *see also FTC v. Credit Bureau Ctr., LLC,* 2021 WL 4146884, at *2-3, *6 (N.D. Ill. Sept. 13, 2021) (granting FTC's Rule 59(e) motion for judgment under ROSCA instead of Section 13(b), where, like here, the original complaint pled ROSCA but not Section 19).[4]

Notably, Wells Fargo fails to inform the court that several other courts have denied *AMG*-based Rule 60 motions, like the one Wells Fargo seeks to bring here.  "[G]iven the similarity between Section 19(a)(1) and Section 13(b)," courts have rejected such motions even where the court "did not make an ***express*** finding under Section 19" in the original judgment.  *See FTC v. John Beck Amazing Profits, LLC*,

---

the clear text of 15 U.S.C. § 57b(a)(1), the closest one court has come to Wells Fargo's view is to merely repeat, in dicta, *AMG*'s statement that § 57b(a)(2) is an alternative route for the FTC to obtain monetary relief.  *See FTC v. AH Media Grp., LLC,* 2021 WL 5053092, at *1 (N.D. Cal. Nov. 1, 2021).

[4] Wells Fargo makes misleading comparisons to other cases that, unlike here, *remained open*, had not reached judgment when *AMG* was decided, or did not involve ROSCA or Section 19 claims.  *See* Dkt. 153-1 at 13-15 and 14 n.8.

2021 WL 4313101, at *5 (C.D. Cal. Aug. 19, 2021) (emphasis in original); *cf. Credit Bureau,* 2021 WL 4146884, at *8 (relief under Section 19 is for "the same remedy" as sought under Section 13(b)).  Similarly, the court in the related Apex Action found *AMG* is no basis to overturn a stipulated judgment under Rules 60(b)(4), -(5), or -(6).  *See* Smith Decl., Ex. C; *see also AH Media,* 2021 WL 5053092, at *1 (same); *FTC v. Nat'l Urological Grp., Inc.*, et al., 2021 WL 5774177 (N.D. Ga. Sept. 30, 2021) (same for Rule 60(b)(5) and -(6)).

Third, receivers, too, remain permissible in FTC cases independent of *any* monetary relief to prevent consumer harm by businesses permeated by fraud.[5]

## II.   WELLS FARGO LACKS STANDING TO INTERVENE.

Proposed intervenors must have independent Article III standing "in order to pursue different relief from that sought by . . . the plaintiff."  *Oregon Prescr. Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1231, 1233 (9th Cir. 2017); *Town of Chester v. Laroe Estates*, 137 S.Ct. 1645, 1651 (2017).  Their injury must not be speculative, but "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Oregon Prescr.*, 860 F.3d at 1234-35 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Wells Fargo lacks standing for two key reasons.

First, the injury Wells Fargo alleges is far too speculative to confer standing.  Specifically, Wells Fargo argues it *may* have to pay a monetary judgment and litigation costs contingent on the Receiver's (or Corporate Defendants') success in a separate action based on completely distinct legal grounds.  *See* Dkt. 153-1 at 21.

---

[5] *See Noland*, 2021 WL 4318466, at *3 and n.2; *see also CFTC v. Co Petro Mktg. Group, Inc.*, 680 F.2d 573, 583 (9th Cir. 1982) (receiver could be "justified as a means of assuring that Co Petro would not go back into the futures business in violation of the injunction."); *SEC v. Heritage Trust Co.*, 402 F. Supp. 744, 753 (D. Ariz. 1975) ("receiver is necessary to protect the public interest"); *SEC v. Homestead Properties, L.P.*, 2009 WL5173685, at *6 (C.D. Cal. Dec. 18, 2009) (receiver "necessary to protect [investors] from future violations.").

Those are precisely the supposed injuries found in this district to be insufficient to confer Article III standing. *See San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 866-867 (S.D. Cal. 2018) ("The threat that Monsanto may be found liable in this action . . . or future actions remains speculative" for standing to raise counterclaims. "Litigation costs are insufficient to establish standing for purposes of Article III."); *see also Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021) (litigation costs not a basis for standing).

Second, Wells Fargo fails to establish "a likelihood that an injury-in-fact will be redressed by a favorable decision." *Monsanto,* 309 F. Supp. 3d at 867. It requests the court vacate a November 2019 order that is limited to hiring a specific law firm on a contingency basis and closing the case. *See* Dkts. 153-2 at 3, 23 and 142 at 3. Wells Fargo claims not to want to disturb the separate judgments or injunctions, which appointed the Receiver and empowered him to liquidate all corporate assets. That alone evinces why its supposed injury (being sued) cannot be redressed by a favorable decision here. Even if the specific order it seeks to rescind were vacated, the Receiver would still have the authority to sue Wells Fargo under the permanent injunction powers.[6]

Moreover, even if Wells Fargo were challenging the Permanent Injunctions' monetary awards based on *AMG*, and the Court permits such a *post-hoc* challenge, the motion to intervene still must fail because Wells Fargo has no redressable injury, and therefore, no standing. Specifically, as every other court that has addressed this issue has held, ROSCA violations support the judgments as entered. A failure to cite Section 19 does not change this outcome. *See* Section I.C.

Even if the Court vacates the existing monetary judgment, the bank would

---

[6] *See* Section I.A. The permanent injunctions "continued" the Receiver's duties until "completion of" "the liquidation of all assets of Stipulating Corporate Defendants," and authorized the FTC or Receiver to extend that term for good cause. Dkts. 126 at 16-17; 127 at 15-16.

still lack a redressable injury because the parties could simply engage in one of many senselessly duplicative processes to reach the same monetary judgment. Specifically, the parties could resettle the case to include explicit reference to "Section 19," seek Rule 59(e) relief as in *Credit Bureau Ctr., LLC,* 2021 WL 4146884, at *2-3, *6, or waste immense amounts of the Court's time in litigating the matter, only to reach the same result.  While extremely prejudicial to the FTC and Defendants, such a process would leave Wells Fargo right back where it is now – with contingent liability for its wrongs against the Corporate Defendants.

## III.   WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE AS OF RIGHT.

Even if it had standing, Wells Fargo cannot meet its burden to intervene as of right.  To do so, it must establish: (1) timeliness, (2) a "significantly protectable" interest relating to the property or transaction that is the subject of the action, (3) that disposition of the action may impair or impede the movant's ability to protect the interest, and (4) that its interest is not adequately represented by the parties.  *Cooper v. Newsom*, 13 F.4th 857, 864-65 (9th Cir. 2021).  Failure to satisfy any of these elements is fatal.  *Id.* at 865.  The factors are broadly interpreted in favor of intervenors.  *Id*.  However, "post judgment intervention," like that here, "is generally disfavored because it creates delay and prejudice to existing parties."  *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (internal citations and quotations omitted); *see also Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir. 1978) (post-consent decree intervention "is reserved for exceptional cases.").  Wells Fargo cannot meet its burden on any element.

### A.   The Motion Is Untimely.

"Timeliness is the threshold requirement for an intervention as of right." *League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (cleaned up); *see* Fed. R. Civ. P. 24(a).  Courts focus on three primary factors in assessing timeliness: (1) the stage of the proceeding at which a movant seeks to

intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).

### 1. The proceeding is closed and Wells Fargo knew, or should have known, its interests were at risk in 2019.

Courts evaluate the stage of the proceeding both in general and in relation to how long an applicant has known or should have known their interests were at risk. *See, e.g., Smith,* 830 F.3d at 854-56.

#### a) The proceeding is closed.

Two and a half years ago, the Court entered stipulated permanent injunctions in this matter that include the relief Wells Fargo now seeks to undo. Dkts. 126, 127. In general, courts in closed cases hold intervention untimely when brought far sooner than here. *See United States v. Lande*, 2008 WL 11490112, at *1 (D. Mont. Jan. 17, 2008) (moving just *four days* after a judgment, "indicates the motion's untimeliness"); *Herb Reed Enters., Inc. v. Bennett*, 2012 WL 5989632, at *4 (D. Nev. Nov. 29, 2012) (denying intervention in closed case as untimely 16 months after movant knew of the order at issue); *cf. Montgomery v. United States*, 2012 WL 124854, at *1, 8 (S.D. Cal. Jan. 17, 2012) (moving 22 days after the parties noticed their settlement "weighs heavily against" timeliness).

Importantly, Wells Fargo's intervention would cause the Court to relitigate the stipulated judgments and the order authorizing the Receiver to hire counsel. Intervention is "disfavored" where – as here – a party seeks intervention "merely to thwart a remedy rather than participate in the future administration of the remedy." *U.S. v. Alisal Water,* 370 F.3d 915, 922 (9th Cir. 2004). In addition, where movants "desire to relitigate issues already determined," it is "especially true" that the timeliness factor "weighs heavily against" them. *Alaniz*, 572 F.2d at 659 and n.2; *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) ("[W]aiting until after entry of a consent decree weighs heavily against intervention."). These considerations are potent here, where, as discussed above, if Wells Fargo

1    intervenes, it would disrupt the parties' stipulated judgments and cause the parties
2    to expend resources, but end in the same result that exists now.

3          **b)     Wells Fargo has long known its interests were at risk.**

4         Court have long held the date when an intervenor had notice that his or her
5    rights were in jeopardy is an essential inquiry in assessing the stage of the
6    proceeding. "A party must intervene when he knows or has reason to know that
7    his interests might be adversely affected by the outcome of litigation." *Alisal*
8    *Water*, 370 F.3d at 923. This is the "crucial date for assessing the timeliness of a
9    motion to intervene." *Smith*, 830 F.3d at 854. Here, Wells Fargo knew, or had
10   reason to know, its interests might be adversely affected at least when the Receiver
11   filed his motion to hire counsel *to sue Wells Fargo* **on October 22, 2019** (Dkt.
12   136-1 at 2)—759 days or over 24 months before Wells Fargo moved to intervene.
13   Wells Fargo's Motion omits the long series of facts detailed below that establish it
14   knew or had reason to know as of October 2019 that its right might be affected.

15        Moreover, Wells Fargo's involvement with the case began before the FTC
16   even filed its Complaint and continued afterwards. Wells Fargo allegedly knew of
17   the Defendants' unlawful acts as they occurred. *See* Dkt. 154 at 24-27. In 2017,
18   Wells Fargo responded to an FTC administrative subpoena and identified
19   numerous accounts it opened under multiple corporate names for those same
20   persons. *See* Dkt. 5-3 at 58-65 (¶¶ 139, 141-143, 147-153). Wells Fargo received
21   the Court's TRO (Dkt. 11) on July 2, 2018. Dkt. 28-1 at 4 (¶3). The bank then
22   froze dozens of accounts and produced related documents. *See* Dkts. 30 at 25-27,
23   153-1 at 10. At that time, Wells Fargo was also subject to regulatory and criminal
24   investigations as well as civil litigation related to its widespread improper account
25   opening practices. *See generally* Dkt. 154 at 26, 28, 35-36 (noting $185 million in
26   fines in 2016, and *one billion dollars* in 2018 fines); *In re Wells Fargo Fraudulent*
27   *Acct. Opening Litig.,* 282 F. Supp. 3d 1360 (U.S. Jud. Pan. Mult. Lit. 2017) (noting
28   10 open cases against Wells Fargo).

Additionally, Wells Fargo knew as it was freezing Defendants' accounts that receivers in cases initiated by the FTC have sued banks, *including Wells Fargo*, pursuant to their duties under the court order appointing them.  *See, e.g., Perlman v. Wells Fargo Bank*, N.A., 559 F. App'x 988, 989 (11th Cir. 2014).  This is true even though the FTC Act prohibits *the FTC* from suing banks, which Wells Fargo knew or should have known.[7]  In such cases, the receivers do not allege FTC Act violations – which can only be prosecuted by the FTC and which exclude banks – but instead sound under a range of tort and other claims arising from the banks' conduct in concert with or on behalf of various defendants in the FTC actions.  *See id.* (remanding suit by receiver, appointed in FTC case, against Wells Fargo).  Receivers appointed in other civil enforcement actions bring similar cases.[8]

In 2019 and throughout 2020, the Receiver engaged Wells Fargo and sought publicly to sue it arising from Wells Fargo's role with the Defendants and the documents it produced.  Specifically, on May 2, 2019, the Receiver subpoenaed Wells Fargo seeking information about accounts in the Apex Action.  Smith Decl.

---

[7] This is true despite Wells Fargo's repeated incantation that the FTC had not sued it.  *See* Dkt. 153-2 at 6 ("Wells Fargo was not named as a party"), 16 ("the FTC never alleged any wrongdoing by Wells Fargo"); Dkt. 153-1 at 18 ("FTC never charged Wells Fargo . . . and never named Wells Fargo"), 19 (FTC acted "without involving Wells Fargo" apart from as "a third-party . . . witness"), 2 ("Wells Fargo's Role as Third-Party Witness"), 6 ("not a party"), 10 (just a "third-party corporate witness"), 10 ("not a party"), 18 ("nothing more than a third-party witness"), 23 ("actual wrongdoers, the Defendants," not Wells Fargo).

[8] *See Wiand v. Wells Fargo Bank, N.A.,* 86 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015) (resolving at summary judgment SEC receiver's claims against Wells Fargo), *aff'd* 677 F. App'x 573 (11th Cir. 2017); *Perlman v. Bank of Am., N.A.*, 561 F. App'x 810, 811 (11th Cir. 2014); *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 958-59 (5th Cir. 2012) (affirming disposition on merits of SEC receiver's claim for conversion against Wells Fargo); *Cotton v. Wells Fargo Bank N.A.*, 2011 WL 13227816, at *1 (C.D. Cal. Feb. 22, 2011) (SEC receiver's claims against Wells Fargo for aiding and abetting breach of fiduciary duty, conversion, fraudulent transfer, and constructive fraudulent transfer).

¶ 6.  Wells Fargo did not move to quash the subpoena.  The Receiver ultimately identified more than 150 relevant accounts that Wells Fargo opened through approximately 100 shell companies.  *See* Dkt. 154 at 24.

On October 22, 2019, the Receiver publicly sought Court approval to hire contingency counsel to pursue claims against Wells Fargo, Dkt. 136, which this Court granted on November 11, 2019, the same day it closed this case, Dkt. 142. On February 4, 2020, the Receiver sought similar approval in the Apex Action (Apex Dkt. 144), which that court granted on March 9, 2020 (Apex Dkt. 153). Smith Decl. ¶ 9.

In April 2020, Wells Fargo unquestionably knew that its interests might affected, yet delayed moving to intervene for another 19 months.  On April 1, 2020, the Receiver sent Wells Fargo draft complaints against it and a mediation proposal.  Smith Decl. ¶ 10.  Wells Fargo responded and executed a tolling agreement.  *Id.* ¶ 11.  Throughout April, May, June, July, and September 2020, Wells Fargo engaged the Receiver on the draft complaints against it.  *Id.* ¶¶ 12-21. They held a mediation in November 2020.  *Id.* ¶ 22.  Further discussions between them occurred from November 2020 to June 2021, including a second mediation in April 2021.  *Id.* ¶¶ 23-27.  In August 2021, Wells Fargo said it plans to intervene in the Apex Action due to *AMG*, but has yet to do so.  *Id.* ¶ 30-34.

Given this history, Wells Fargo knew or had reason to know in October 2019 that its rights may be affected.  It could have attempted to intervene then (or even tried to be heard as a non-party) to raise largely the same arguments it seeks now to intervene to make.  Specifically, it could have made the "compelling equities" argument it now seeks to raise, as well as its due process concerns and its contention that the FTC's May 2019 settlements are supposedly too lenient.  *See* Dkt. 153-2 at 15-16.  It also could have made its incorrect argument two years ago that corporate defendants in receivership are limited to pursuing only those claims that the party that sought the receiver's appointment could.  Instead, it sat on the

sidelines and lost whatever ability to intervene it may have held.  *See Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*, 2017 WL 4769439, *1 (C.D. Cal. 2017) ("A potential intervenor is not allowed to sit on its rights for the entire litigation to see how things turn out and then move at the late stages of the case for a 'do-over.'"); *Herb Reed*, 2012 WL 5989632, at *4 (denying intervention where applicant "made a strategic decision" to pursue other path for months before attempting to intervene).

Wells Fargo's prolonged inaction stands in stark contrast to the conduct of potential intervenors where this Court granted intervention.  *See Trunk v. City of San Diego*, 2012 WL 6213712, at *1-2 (S.D. Cal. Dec. 12, 2012) (Burns, J.).  In *Trunk*, the putative intervenors raised the issue the day they became aware their rights were affected.  *See id.* at *1-4; *Trunk*, No. 06-CV-1597 (*Trunk* Dkts. 308, 310) (noting status conference same day as Ninth Circuit mandate and setting briefing to intervene).  This Court observed, it "bears mentioning that neither the proposed intervenors nor the Court can adopt a wait-and-see attitude.  A later motion . . . seeking leave to intervene would very likely be untimely." *Trunk*, 2012 WL 6213712, at *2.  "Wait-and-see" aptly sums up Wells Fargo's strategy here.

The Motion is long delayed even under Wells Fargo's view.  Specifically, it argues (again incorrectly) that "an actionable dispute" only arose after *AMG* on April 22, 2021 (203 days before the Motion) or after the Receiver filed suit on July 8, 2021 (126 days before the Motion), Dkt. 153-1 at 19.  First, it offers no reason why *AMG* suddenly created any of the arguments detailed in this sub-section.  Second, and critically, it offers no argument at all for its 4-to-7-month delay after the events Wells Fargo itself claims provided its "actionable dispute."

### 2.     Wells Fargo's delay prejudices the parties.

Wells Fargo's intervention would also prejudice the parties.  *See Smith*, 830 F.3d at 854.  Delay and prejudice caused by post-judgment intervention is the very reason such action is "generally disfavored." *Calvert*, 109 F.3d at 638.  At its core,

Wells Fargo seeks to upset two final judgments.  If permitted to intervene the FTC (and consumers) would suffer prejudice in five ways.

First, as a general principle, it is "reasonable for the Court to conclude that the United States would suffer prejudice . . . because the case is concluded and the United States has attained a Judgment after the litigation had been pending" for many months.  *See Lande,* 2008 WL 11490112, at *1.[9]

Second, the FTC would have to litigate the intervenors' claims.  *See Calvert,* 109 F. 3d at 638.  This prejudice would be compounded by the fact it would raise some issues "not raised earlier," but which Wells Fargo could have raised.  For example, its arguments about the fairness of the stipulated judgments.  *See* Section III.A.1, *supra; Hawaii v. U.S. Dep't of Educ.,* 2010 WL 346445, at *3 (D. Haw. Jan. 29, 2010) (finding prejudice in having to "relitigate old issues" and new ones where "case was already closed and judgment entered" a year earlier); *see also Alisal Water,* 370 F.3d at 922 (finding prejudice where a movant seeks to "inject new issues into the litigation at this late date").

Third, if the intervenors' proposed action were to succeed, it would cause the FTC to engage in senseless duplicative litigation to amend the judgments or otherwise obtain the same result it already has either through further settlement negotiations or re-litigating the underlying case against the Defendants.  Wells Fargo wrongly asserts it "is not [trying] to contest the judgments imposed against the defendants," Dkt. 153-1 at 6, but that is *exactly* what it is doing.  The Corporate

---

[9] Wells Fargo is just wrong when it claims, Dkt. 153-1 at 20, that "it cannot cause either undue delay or prejudice to [the] original parties" because it moves "in an otherwise closed matter," citing *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.,* 309 F.3d 1113, 1120 (9th Cir. 2002).  The Ninth Circuit there *upheld* a denial of intervention precisely *because of the prejudice* in "threaten[ing] the parties' settlement" and that it would "upset the delicate balance achieved by the [parties'] Consent Decree." *Id.* at 1119.  The other case Wells Fargo cites for prejudice in closed cases, involved an *ongoing* case. *See* Dkt. 153-1 at 20; *Day v. Apoliona,* 505 F.3d 963, 965 (9th Cir. 2007).

Defendants' claims against the bank exist independent of the receivership.  If the monetary judgments remain, as they legally must, the corporations have a claim against the bank.  Wells Fargo's argument is therefore simply a tautology – get rid of the Receiver because the monetary award against the defendants was impermissible but leave the award in place so that the parties suffer no prejudice.  They simply cannot have it both ways.

Fourth, forcing the parties to re-litigate the case would delay and threaten the redress for defrauded consumers, whom the FTC has a vested interest in helping.

Fifth, Wells Fargo's delay has already meant added costs for the Receiver and his counsel to negotiate and litigate the claims against the bank and for the Court in having to adjudicate the motion to dismiss in the Receiver's suit.  *Cf. SEC v. First Choice Mgmt. Servs., Inc.*, 767 F.3d 709, 711 (7th Cir. 2014) (finding prejudice where movant's *"*dawdling, in contrast, imposed costs on the receiver and . . . made added work for the district court).

### 3.    Wells Fargo gives no reason for its four-month delay under its theory, and an inadequate one for its actual two-year delay.

Wells Fargo seeks to intervene well beyond any reasonable time to have done so, and it cannot meet its burden to show an adequate reason for its delay.  *See Smith*, 830 F.3d at 854.  When Wells Fargo filed its Motion, this case had been administratively closed for a week short of two years.  The Court entered Stipulated Permanent Injunctions that Wells Fargo seeks to unravel 2 and ½ years ago (913 days).  The Receiver filed the motion that Wells Fargo seeks to relitigate (Dkt. 136) more than two years ago (759 days), and the Court decided it 723 days prior.  Wells Fargo's 24-month delay is critical because "any substantial lapse of time weighs heavily against intervention." *Wilson*, 131 F.3d at 1302 (internal quotation marks omitted).  Even Wells Fargo's own admitted 4-7 month lapse is wholly unjustified (and likewise unexplained).  Further, its professed reasons for

waiting until after *AMG* and after the Receiver filed suit fail to account for the reality that it could have done so sooner.  *See* Sections III.A.1, III.A.2

Courts have denied recent similar recent requests to intervene based on *AMG* as untimely when brought far earlier than here.  *See FTC v. Noland*, 2021 WL 3290461, at *1, *4 (D. Ariz. Aug. 2, 2021) (denying as untimely *AMG*-based intervention filed just 41 days after *AMG* and "nearly five months after their interests arose"); *FTC v. Zurixx, LLC*, 2021 WL 3510804, at *4 (D. Utah Aug. 10, 2021) (same, noting *AMG,* "[a]t best affects the strength" of proposed intervenors' position, which arose 18 months earlier).  At most, *AMG* is another argument for Wells Fargo to make (albeit a losing one), but does not change the October 2019 date at which it knew or should have known its interests may be affected.

Wells Fargo's motion also comes well after the period other courts found untimely in cases challenging receivership actions.  *See FTC v. Cardiff*, 2020 WL 766336, at *4 (C.D. Cal. 2020), *aff'd*, 830 F. App'x 844 (9th Cir. 2020) (delay of just *two months* after protected interest arose from order related to receivership was untimely and "[a]ny purported 'steps' taken during that time period are insufficient to justify" the delay); *United States v. Petters*, 2009 WL 1174668, at *5 (D. Minn. Apr. 29, 2009), *aff'd sub nom. United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824 (8th Cir. 2010) (delay of "over five months" deemed untimely to challenge appointment of receiver).  The delay is more profound given Wells Fargo's repeated assertion it has actively assisted in the case as a witness going back years.  *See* n.7, *supra*; *Am. Int'l Specialty Lines Ins. Co. v. United States*, 2012 WL 12897865, at *2 (C.D. Cal. Jan. 30, 2012) (intervention untimely where movant "actively assisted" in case for three years yet waited until three months before the damages phase to intervene).

Finally, Wells Fargo misrepresents the lone case it cites on timeliness, suggesting its Motion is timely because a court once granted intervention "though 20 years passed" since the case began.  Dkt. 153 at 18 citing *Smith*, 830 F.3d at

Case No. 18-cv-1388-LAB-LL
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

854.  In *Smith*, however, the intervenors moved within ***79 days*** of becoming aware their interests were not represented.  *Id.* at 853.  The Ninth Circuit emphasized that even that delay, "might, under different circumstances, weigh against timeliness."  *Id.* at 862.  Wells Fargo's 759-day delay is well beyond the realm of *Smith* (and so is the 126-day delay under the bank's own theory).

### B.   Wells Fargo Lacks a Significantly Protectable Interest.

Wells Fargo's self-declared interest is only in not being sued, Dkt. 153-1 at 21, and its lack of standing evinces its lack of a *significantly*, *protectable* interest.  *See* Section II, *supra; Monsanto*, 309 F. Supp. 3d at 866-867 (liability that may arise from litigation not cognizable).

Well Fargo otherwise fails to meet its burden to establish the requisite interest.  It fatally concedes it lacked an interest to intervene prior to July 8, 2021, and its post-July theory (*i.e.,* that its protectable interest arose only once the Receiver filed suit in July 2021 post-*AMG*) falls apart because it is based on its misstatements and omissions about the law.[10]  As explained above, *AMG* left untouched the FTC's ability to obtain monetary relief in cases where it alleges ROSCA violations.  This is true, even where, like here, the FTC in pleading and the Court in adjudicating, mention ROSCA but not Section 19.  *See* Sections I.A, I.C, *supra.*  Moreover, the FTC Act has long barred the FTC from suing banks.  *See* 15 U.S.C. §§ 45(a)(1), 45(a)(2) (empowering the FTC "to prevent persons, partnerships, or corporations, ***except banks*** . . . from using . . . unfair or deceptive acts or practices in or affecting commerce") (emphasis added).  Therefore, nothing relevant to Wells Fargo occurred in 2021 to create an actionable interest.  Because

---

[10] Wells Fargo concedes "it lacked a proper basis to object to the Order Authorizing Litigation when it was entered [i.e., November 11, 2019 (Dkt. 136)]."  Doc. 153-2 at 19.  It twice professes that this state continued until at least July 8, 2021.  *See* Doc. 153-2 at 19 (admitting Wells Fargo "lacked grounds to challenge the Receiver's ability to pursue monetary damages" prior to July 8, 2021); *id.* at 20 ("Wells Fargo could not have filed this motion [before April 22, 2021]").

*AMG* changed only *one* remedy (of the multiple ones on which the judgment Wells Fargo seeks to challenge is expressly premised) *the FTC* could seek against *non-banks*, it can have no effect on the ability of a private corporation or receiver to pursue claims *not under the FTC Act* against *a bank*.

## C.    Disposition of this Case Will Not Impair Wells Fargo's Ability to Protect Its Interest.

Rule 24 requires a movant must be "so situated that disposing of the action may *as a practical matter* impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added).  In the only case Wells Fargo cites on this point, the Ninth Circuit stated it follows the Rule 24 advisory committee's guidance, which state this factor is present if "an absentee would be substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

Disposition of the case cannot, by definition, substantially impair Wells Fargo's ability to protect its interest—assuming for argument's sake it has one—in a practical sense for three reasons.  First, the Rule envisions intervention in an ongoing case in which the future disposition could affect the non-party's rights. This case is closed. There is no future disposition that can affect Wells Fargo because there is nothing left for the Court to decide in the dispute between the FTC and the Defendants.  Second, even if the Court were to find *the Receiver* could not sue Wells Fargo, *the Corporate Defendants* would still have the same claims against the bank.  *See* Clark on Receivers § 329 (3d ed. 1959) (receiver takes only what the "corporation had previous to the appointment of the receiver and no more"); *id.* § 378 (receiver acts as custodian of assets akin to trustee); *id.* § 696 (remaining assets to original owner on receiver's discharge); *cf. CAMOFI Master LDC v. Assoc. Third Party Admins.,* 2018 WL 839134, at *6 (N.D. Cal. Feb. 13, 2018) (claims revert to original owner when trusteeship ends).  In other words, Wells Fargo's supposed interest (having to pay money for its offenses against the

Corporate Defendants), cannot be impaired by the Receiver because those claims survive, even if not brought by the Receiver.  Third, the underlying case did not (and does not) impair any defense Wells Fargo could raise in its current litigation with the corporations.  In fact, that seems to be the point – because Wells Fargo feels it cannot succeed on the merits in that case it is trying to effectively fire the receiver *post hoc*.  A movant does not establish impairment of their rights as a practical matter where they can still make the same arguments notwithstanding the outcome of the case in which they seek to intervene.  *See Hawaii-Pac. Venture Cap. Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977).

### D.    Wells Fargo's Interests Are Adequately Protected

Wells Fargo also cannot meet its burden to show its interests have not been adequately protected by the parties.  *See Cooper,* 13 F.4th at 864-65.  It fails to refute the "legal presumption that the government's representation in a matter of shared interest will be adequate." *Trunk*, 2012 WL 5269307, at *2 (Burns, J.) (quoting *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002)); *see also FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015) ("We presume that the government entity adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation."); *FTC v. First Cap. Consumer Membership Servs., Inc*., 206 F.R.D. 358, 364 (W.D.N.Y. 2001) ("governmental entity deserves special consideration and deference as an adequate representative of the interests of would-be intervenors."). As a result, "[c]ourts have tended to deny requests by nonparties to intervene in FTC enforcement actions."  *FTC v. Noland*, 2021 WL 1237206, at *7 (D. Ariz. Apr. 2, 2021) (citing *Johnson*, 800 F.3d at 450-51).  Wells Fargo does not meet its burden to establish a "very compelling showing to the contrary."  *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting 7C Wright, Miller & Kane, § 1909, at 332).

Here, the FTC and Wells Fargo share the "same ultimate objective," which

is "[t]he most important factor in determining the adequacy of representation"—that receivers appointed in FTC cases follow the law, including *AMG*.  *See id.* 324 F.3d at 1086.  Contrary to the bank's baseless allegations, Dkt. 153-1 at 23, the FTC is not blindly trying to preserve monetary judgments on "an invalid theory." In those cases where *AMG* eliminated the possibility for monetary relief, the FTC has not stood still.  *See SuperTherm*, 2021 WL 3419035, at *3 ("[T]he FTC withdrew its request for equitable monetary relief in light of [*AMG*]."); *Cardiff,* 2021 WL 3616071, at *1 (same); *FTC v. Vyera Pharms., LLC*, 2021 WL 4392481, at *2 (S.D.N.Y. Sept. 24, 2021) (same).  Where necessary, the FTC has argued Section 19 is an appropriate substitute basis to retain monetary relief, and courts should not waste their "significant time and resources" (and those of the parties), to relitigate issues merely to "arriv[e] at the same or a substantially similar end result."  *See John Beck,* 2021 WL 4313101, at *5-6; *see also Credit Bureau*, 2021 WL 4146884, at *11-12 (granting FTC motion to amend judgment in light of *AMG* to impose "the same consumer redress" under Section 19 instead of Section 13). Further, where the FTC is at odds with a receiver, including on Section 13(b), the FTC pushes back.  *E.g., FTC v. On Point Glob. LLC,* 2020 WL 5819809, at *5 (S.D. Fla. Sept. 30, 2020) (denying FTC's request for a "special receiver or independent counsel" where FTC disagreed with receiver's interpretation of Section 13(b) and the order appointing the receiver); *FTC v. Ivy Cap., Inc*., 2011 WL 2470584, at *4 (D. Nev. June 20, 2011) (agreeing with FTC opposition to receiver proposal).

When the Receiver sought to sue Wells Fargo in this case, the FTC reviewed the motion, assessed its legitimacy, and filed its non-opposition. Dkt. 137.  The suit is consistent with what other receivers appointed in FTC cases have done to pursue claims of their receivership estates against third parties where warranted.

*See* p. 13, *supra*.  Were there some *ultra vires* act, the FTC would say so.[11]

## IV.   WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE BY PERMISSION.

The Motion fares no better under the standard for permissive intervention. Such a motion must again be "timely."  Fed. R. Civ. P. 24(b).  The proposed intervenor must "[have] a claim or defense that shares with the main action a common question of law or fact," and "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(1)(B), 24(b)(3).  Movants bear the burden to establish these threshold elements, and the court may deny intervention even if they do.  *Cooper,* 13 F.4th at 868.  Where litigants move timely to intervene, courts consider several other factors, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether the intervenors' interests are adequately represented by other parties[,]and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Thompson v. Wolverine Servs., LLC*, 2021 WL 827605, at *1 (N.D. Cal. Mar. 4, 2021) (quoting *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011)). These *Perry* factors here weigh strongly against intervention, as detailed below, even though common issues of law or fact may be present.

### A.   The Motion Is Untimely Under the "More Strict[]" Standard.

For permissive intervention, courts "analyze the timeliness element more

---

[11] Wells Fargo cites only an inapplicable case on Rule *23* class actions as to why Defendants do not adequately represent it.  *See* Dkt. 153-1 at 23.  It bears noting, as Wells Fargo concedes, that the Defendants opposed the Receiver's motion to hire contingency counsel, the very order the bank seeks to undo.  Dkt. 153-1 at 12.

strictly than . . . intervention as of right." *Wilson*, 131 F.3d at 1302.  The Motion is untimely for the reasons explained above, which is dispositive for permissive intervention as well.  *See id.;* Section III.A, *supra.*  Oddly, the lone case Wells Fargo cites on this factor, Dkt. 153-1 at 25, makes clear that, "[i]ntervention after entry of a consent decree is reserved for exceptional cases."  *See Alaniz*, 572 F.2d at 659; *see also Calvert*, 109 F.3d at 638 (post-judgment intervention "generally disfavored").  In *Alaniz*, the Ninth Circuit upheld a denial of intervention where, like here, it came two and one-half years after suit was filed and the proposed intervenors "knew or should have known" of "risks" to their interests earlier on. *Id.*  The Circuit also held that movants "must convincingly explain their delay." *Id*.  Here, Wells Fargo offers no reason for waiting 4-7 months to intervene under its theory of timeliness, and no adequate one for the 24 months since the Receiver moved to sue Wells Fargo.  *See* Section III.A.3, *supra.*  Nor does it establish what makes its cause "exceptional."  *See Alaniz*, 572 F.2d at 659.

## B.    The Parties Would Be Prejudiced By Intervention

Tellingly, Wells Fargo does not address prejudice under permissive intervention.  *See* Dkt. 153-1 at 25-27; Fed. R. Civ. P. 24(b)(3).  As explained above, permitting Wells Fargo to re-litigate these matters prejudices the FTC, Receiver, and Defendants.  *See* Section III.A.2, *supra*; *see also Mineworkers' Pension Scheme v. First Solar Inc.,* 722 F. App'x 644, 646 (9th Cir. 2018) (upholding denial of permissive intervention to relitigate issue already decided).

## C.    Other Factors Weigh Against Intervention

Many other *Perry* factors that courts consider weigh against intervention. *See Perry*, 630 F.3d at 905.  First, Wells Fargo lacks standing.  *See* Section II, *supra*.  Second, Wells Fargo's interests have been adequately represented.  *See* Section III.D, *supra*.  Third, the legal position Wells Fargo seeks to make is weak, internally inconsistent, contrary to the plain text of the FTC Act, and has been rejected by district courts that considered similar arguments.  *See* Section I.C,

*supra.*  Fourth, the nature and extent of Wells Fargo's interest is in parading myriad claims that are not extant in this case to try and immunize itself from a multi-million dollar suit.  Therefore, it is not appropriate to re-open 30-month-old judgments and a two-year old order to compel the FTC and Defendants to re-stipulate to judgments or litigate a case they settled.  Fifth, Wells Fargo's participation will not significantly contribute to the full development of the factual issues in this case precisely because it is closed.  Finally, Wells Fargo will not significantly contribute to the just and equitable adjudication of the legal issues *in this case*.  Its belated and fatally flawed arguments merely seek to shield itself unjustly from liability for the offenses the Receiver alleges it committed against the Corporate Defendants, which endure beyond whatever the Court decides here.

## **CONCLUSION**

For the reasons discussed above, the FTC respectfully requests the Court deny Wells Fargo's motion to intervene.

Dated:  December 20, 2021          s/  Jonathan W. Ware
                                  JONATHAN W. WARE
                                  Federal Trade Commission
                                  600 Pennsylvania Avenue, NW CC-9528
                                  Washington, DC 20580
                                  Tel: (202) 326-2726
                                  Fax: (202) 326-3197
                                  jware1@ftc.gov

                                  Attorneys for Plaintiff
                                  FEDERAL TRADE COMMISSION