**MCGUIREWOODS LLP**
DAVID C. POWELL (SBN 129781)
dpowell@mcguirewoods.com
ALICIA A. BAIARDO (SBN 254228)
abaiardo@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

**MCGUIREWOODS LLP**
KEVIN M. LALLY (SBN 226402)
klally@mcguirewoods.com
355 S. Grand Avenue, Suite 4200
Los Angeles, CA 90071
Telephone: 213.627.2268
Facsimile: 213.627.2579

Attorneys for Proposed Intervenors
Wells Fargo & Company and
Wells Fargo Bank N.A.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>               Plaintiff,<br><br>        v.<br><br>TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC; GLOBAL NORTHERN TRADING LIMITED; BRIAN PHILLIPS; and DEVIN KEER,<br><br>               Defendants. | CASE NO. 18-cv-1388-LAB-LL<br><br>Judge: Hon. Larry Alan Burns<br><br>**PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO INTERVENE**<br><br>Date: January 24, 2022<br>Time: 11:15 a.m.<br>Ctrm: 14A |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ...................................................................................... 2

A.    The Court Appointed the Receiver Pursuant to Section 13(b) ............. 3

B.    Wells Fargo Has Met Its Burden Establishing the Factors to
      Intervene as a Matter of Right .................................................. 4

      (1)    Wells Fargo's Motion to Intervene is Timely ............................ 4

             i.    The Court Expressly Retained Jurisdiction Over
                   Matters Related to the Receivership ................................. 4

             ii.   The FTC and Receiver's Misframed Timeliness
                   Arguments Should Be Rejected ....................................... 5

                   a.    An Administrative Subpoena is Not Adequate
                         Notice that its Interests Could be Affected ............. 5

                   b.    Wells Fargo Was Not On Notice in October
                         of 2019 or in April of 2020 ................................. 6

                   c.    Intervening Within Four-Months Does Not
                         Warrant a Finding of Untimeliness ........................ 8

             iii.  Wells Fargo Could Not Have Challenged the
                   Receiver's Authority to Pursue Monetary Damages
                   in the Receiver's Action ................................................ 11

      (2)    The FTC and the Receiver Will Not Suffer Prejudice as a
             Result of Wells Fargo's Motion .......................................... 11

      (3)    Wells Fargo Has Established a Protectable Interest and
             That Its Interests Cannot and Will Not Be Adequately
             Protected ........................................................................ 14

      (4)    Wells Fargo Has Adequately Established That Its Interests
             Will Be Impaired by Disposition of This Case ....................... 17

C.    Wells Fargo Has Met Its Burden for Permissive Intervention ............ 18

III.  CONCLUSION ................................................................................. 19

CERTIFICATE OF SERVICE ...................................................................... 21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) ............................................................. 6

*Banco Popular de Puerto Rico v. Greenblatt,*
   964 F.2d 1227 (1st Cir. 1992) ........................................................... 10

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995) ......................................................................... 17

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ......................................................................... 14

*Day v. Apoliona,*
   505 F.3d 963 (9th Cir. 2007) ............................................................. 8

*E. Bay Sanctuary Covenant v. Biden,*
   993 F.3d 640 (9th Cir. 2021) ....................................................... 14, 15

*Friends of the Earth v. Sanderson Farms, Inc.,*
   992 F.3d 854 (S.D. Cal. 2018) ........................................................... 15

*FTC v. AMG Cap. Mgmt., LLC,*
   910 F.3d 417 (9th Cir. 2018) .............................................................. 5

*FTC v. Apex Capital Group, LLC, et al.,*
   Case No. 3:18-cv-01388-lAB-LL (S.D. Cal.) ....................... 2, 5, 8, 11

*FTC v. Cardiff,*
   No. ED CV 18-2104-DMG, 2021 U.S. Dist. LEXIS 155342 (C.D.
   Cal. June 29, 2021) ............................................................................ 3

*FTC v. Noland,*
   No. CV-20-00047-PHX-DWL, 2021 WL 3290461 (D. Ariz. Aug. 2,
   2021) ................................................................................................. 7

*FTC v. Zurixx, LLC,*
   No. 2:19-CV-00713-DK-DAO, 2021 WL 3510804 (D. Utah Aug.
   10, 2021) ........................................................................................... 7

ii

*Havens Realty Corp v. Coleman*,
    455 U.S. 363 (1982) ........................................................................... 15

*Jordan v. Nationstar Mortg., LLC*,
    No. 2:14-CV-0175-TOR, 2016 WL 7494297 (E.D. Wash. Oct. 14,
    2016) .............................................................................................. 9

*Lewis v. First Am. Title Ins. Co.*,
    No. 1:06-CV-478-EJF-LMB, 2010 WL 3735485 (D. Idaho Aug. 5,
    2010) .............................................................................................. 10

*Nat'l Ass'n for Advancement of Colored People v. New York*,
    413 U.S. 345, 367-68 (1973) ......................................................... 10

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir. 2011) .......................................................... 15

*Perry v. Proposition 8 Off. Proponents*,
    587 F.3d 947 (9th Cir. 2009) .......................................................... 6

*Project Sentinel v. Evergreen Ridge Apartments*,
    40 F. Supp. 2d 1136 (N.D. Cal. 1999) ........................................... 15

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp*,
    584 F.3d 1, 8-10 (1st Cir. 2009) ................................................... 10

*Rein v. Providian Fin. Corp.*,
    270 F.3d 895 (9th Cir. 2001) .................................................. 11, 17

*Sage Electrochromics, Inc. v. View, Inc.*,
    No. 12-CV-06441-JST, 2013 WL 6139713 (N.D. Cal. Nov. 21,
    2013) .............................................................................................. 9

*San Diego Unified Port Dist. v. Monsanto Co.*,
    309 F. Supp. 3d 854 (S.D. Cal. 2018) ........................................... 15

*Scholl v. Mnuchin*,
    No. 20-CV-05309-PJH, 2021 WL 84487 (N.D. Cal. Jan. 11, 2021) ............... 11

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ......................................................... 11

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ........................................................... 2

iii

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ........................................................................ 16

*U.S. v. Oregon*,
   745 F.2d 550 (9th Cir. 1984) ............................................................... 8

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ............................................................... 2

*Walker v. Birmingham*,
   388 U.S. 307 (1967) ........................................................................... 17

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................... 15

**Statutes**

All Writs Act, 28 U.S.C. § 1651 ................................................................ 3

FTC Act § 13(b), 15 U.S.C. §§ 53(b) ......................................... 1, 3, 5, 6, 13, 14, 17

**Other Authorities**

Fed. R. Civ. P. 24(b) ............................................................................... 18

Fed. R. Civ. P. 65 ..................................................................................... 3

# I.   __INTRODUCTION__

Wells Fargo's Motion to Intervene ("Motion") establishes that it should be granted intervention, as of right or by permission of this Court. It is indisputable that this Court referenced only one section of the FTC Act when addressing its authority to appoint a Receiver: Section 13(b). It is equally indisputable that this Court's order appointing the Receiver cites to only one section of the FTC Act: 13(b). The Supreme Court in *AMG Capital* found that Circuit Courts, including the Ninth Circuit in that very case, erroneously had interpreted the scope of equitable authority under Section 13(b), which is statute specific, and held that Section 13(b) could not serve as the basis of monetary relief. The Receiver, appointed pursuant to Section 13(b), has sued Wells Fargo to backfill monetary judgments that were imposed pursuant to Section 13(b). Wells Fargo has satisfied the requirements of intervention and has a due process right to challenge the orders issued in this case—which are now known to be unlawful—that authorize the Receiver to pursue monetary damages against it to be used for what the FTC has acknowledged to be "an integral part of their [*i.e.*, the Defendants] respective judgments." FTC's Opposition to Wells Fargo's Motion to Intervene ("FTC Opp.") at 5.

Wells Fargo's Motion is clear that it is only seeking intervention to challenge ***the continuing viability*** of the orders issued in this case allowing the Receiver to pursue litigation against Wells Fargo. In a misguided effort to short-circuit full consideration of the merits of its proposed underlying motion, the FTC and the Receiver interject misframed merits arguments, distort the timeline in challenging the timeliness of Wells Fargo's motion, and argue that Wells Fargo does not have a protectable interest in challenging orders that are targeted directly at it (the FTC even argues that Wells Fargo lacks standing to seek intervention). The FTC and Receiver's arguments do not change the fact that intervention is warranted for the following five reasons:

First, the FTC and Receiver's focus on the underlying record are transparent attempts to argue, at length, merits issues not before the Court at this stage. By doing so, the FTC and Receiver highlight significant merits issues that require full briefing and resolution by this Court, underscoring the importance that intervention be granted.

Second, contrary to the FTC and Receiver's assertions, Wells Fargo's Motion is timely as it was brought within four months of when it acquired standing.

Third, Wells Fargo's protectable interest is not simply the "right not to be sued" but its right not to have an unlawful order applied against it. Moreover, neither the FTC nor the Receiver will adequately protect Wells Fargo's interests.

Fourth, Wells Fargo must seek redress from this Court because the collateral attack doctrine bars it from challenging this Court's order in another court or another matter, including the separate Wells Fargo Litigation the Receiver filed.

Finally, Wells Fargo has met its burden for permissive intervention because its Motion is timely, clearly shares common questions of law and fact with the underlying litigation, and will not unnecessarily expand this Court's jurisdiction.

## II.  **<u>ARGUMENT</u>**[1]

When evaluating the factors for intervention, the "courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d

---

[1] *FTC v. Apex Capital Group, LLC, et al.,* Case No. 3:18-cv-01388-lAB-LL (S.D. Cal.) ("*Apex*"), has no bearing on this case and is not properly before this Court. The *Apex* action involved entirely different parties, different schemes, and different charges by the FTC.

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

810, 820 (9th Cir. 2001).

## A.    The Court Appointed the Receiver Pursuant to Section 13(b)

The record in this case is clear that the only section of the FTC Act that the Court relied on in appointing the Receiver is Section 13(b). Dkt. 11 ("This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. §§ 53(b), Fed. R. Civ. P. 65; and the All Writs Act, 28 U.S.C. § 1651."). The FTC and Receiver cannot legitimately dispute that the FTC sought damages under Section 13(b) and that the decision in *AMG Capital* that monetary damages are not recoverable stemmed from the Supreme Court's recognition of the limited grant of equitable authority under Section 13(b). Dkt. 168 ("Rec. Opp.") at 3-7; FTC Opp. at 2-8. Moreover, neither the FTC nor the Receiver can contest that the FTC never expressly pled Section 19, that it entered into "no fault" settlements, and that this Court did not make any specific finding of a ROSCA-based rule violation either at settlement or when closing the case as to the underlying parties. Stated differently, the FTC and the Receiver's claim that the record plainly establishes that the government proceeded under Section 19 is not supported by the record.

On the contrary, this claim highlights why full briefing on the merits is required. For instance, the FTC and Receiver both cite to the district court decision in *Cardiff* to support their claims that a ROSCA claim brought under Section 19 can be the basis of monetary recovery post-*AMG Capital*. FTC Opp. at 7; Rec. Opp. at 5-6. They omit the most critical facts, however, as Section19 was both pled and proved in summary judgment in *Cardiff* – and more importantly, that the court still precluded monetary recovery because the FTC initially had sought damages under Section 13(b) and had not timely provided the requisite expert disclosures to support an independent damage award under Section 19. *FTC v. Cardiff,* No. ED CV 18-2104-DMG (PLAx), 2021 U.S. Dist. LEXIS 155342, at *19 (C.D. Cal. June 29, 2021). *Cardiff*, therefore, more accurately demonstrates how efforts by the FTC to

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

1  recast their cases as salvageable under Section 19 rely on facts, nuance, procedural

2  posture and judicial discretion. Upon full briefing, Wells Fargo will explain how all

3  of these considerations dictate against making such a finding in this case.

### B.    Wells Fargo Has Met Its Burden Establishing the Factors to Intervene as a Matter of Right

#### (1)    Wells Fargo's Motion to Intervene is Timely

7  The instant motion is timely for several reasons. Contrary to the FTC and

8  Receiver's arguments, this case is not yet closed for purposes of determining the

9  scope of the Receiver's authority. Further, it was not until July 8, 2021, that Wells

10  Fargo's protectable interest arose. Once Wells Fargo's protectable interest arose, it

11  moved promptly to intervene by filing this Motion just four months after the

12  Receiver brought his action against Wells Fargo.

### i.    The Court Expressly Retained Jurisdiction Over Matters Related to the Receivership

15  Both the FTC and the Receiver argue Wells Fargo's motion is untimely

16  because the case was administratively closed on November 19, 2019, after the Final

17  Stipulated Judgments were entered on May 30, 2019. FTC Opp. at 11; Rec. Opp. at

18  19. However, the case is not closed as to the issues presently before the Court. The

19  Court administratively closed the proceedings between the FTC and the Defendants,

20  but expressly retained jurisdiction over "matters related to the Receivership or

21  enforcement of the Court's judgments, filings and other proceedings in this matter."

22  Dkt. 142 at 3; Mot. at 7. Thus, the case is still open for the purpose of determining

23  the Receiver's authority to prospectively seek recovery of a monetary judgment

24  against Wells Fargo following the decision in *AMG Capital*. Given that the case is

25  open for this express purpose and the triggering events providing the basis for Wells

26  Fargo's claim only recently occurred, it is entirely appropriate that Wells Fargo

27  bring this motion at this stage of the proceedings.

28

The FTC further argues that intervention would "cause the Court to relitigate the stipulated judgments and the order authorizing the Receiver to hire counsel . . . merely to thwart a remedy rather than participate in the future administration of the remedy." FTC Opp. at 11. This simply is not true. As Wells Fargo made clear, it is not attempting to disrupt the underlying final judgments. Rather, it seeks to intervene only to challenge the orders giving the Receiver the authority to pursue litigation against Wells Fargo.

### ii. The FTC and Receiver's Misframed Timeliness Arguments Should Be Rejected

Both the FTC and the Receiver argue that Wells Fargo's Motion is untimely, claiming Wells Fargo was somehow "on notice" before *either* the issuance of the Supreme Court's *AMG Capital* decision in April 2021 or being sued by the Receiver in July 2021. This simply ignores the fact that, until *AMG Capital,* 25 years of controlling Ninth Circuit precedent interpreted the scope of equitable relief under Section 13(b) as permitting recovery of monetary damages. *See e.g. FTC v. AMG Cap. Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018) (overturned Ninth Circuit decision affirming the district court had the power to order equitable monetary relief under Section 13(b)). The idea that Wells Fargo had any basis to intervene before *AMG Capital* (or before being sued) fails to pass the straight-face test. The question of timeliness begins as of July 8, 2021, when the Receiver sued Wells Fargo, seeking prospective recovery of monetary damages based on the equitable monetary judgments awarded to the FTC as part of the underlying Section 13(b) proceeding. It was only then that an actionable dispute warranting intervention arose.

### a. An Administrative Subpoena is Not Adequate Notice that its Interests Could be Affected

The FTC argues Wells Fargo should have been on notice its interests could be affected on either of two dates it responded to subpoenas: 2017 (FTC administrative subpoena identifying accounts that had been opened under multiple corporate

5

names) or 2019 (Receiver subpoena seeking information about accounts in *Apex*).
FTC Opp. at 12-13. This reasoning leads to an absurd result. A bank cannot be
expected every time it receives a subpoena to anticipate that its interests would be
affected and file a motion to intervene in the underlying action. Doing so would
impose a needless burden on banking institutions and the courts alike. There is no
dispute Wells Fargo would have had no basis to intervene pre-*AMG Capital*. *See*
FTC Opp. at 8 (arguing Wells Fargo currently has no standing even after *AMG
Capital*).

### b.     *Wells Fargo Was Not On Notice in October of 2019 or in April of 2020*

The FTC and Receiver proffer a number of different pre-*AMG Capital* dates
they argue should serve as the marker for evaluating timeliness: May 30, 2019,
when the stipulated judgments were entered; October 22, 2019, when the Receiver
filed his motion for "authorization to engage contingency counsel and made public
his intent to pursue claims against Wells Fargo on behalf of the Receivership
Entities;" April 1, 2020, when the Receiver sent Wells Fargo a draft complaint; or
April 2021, when the Supreme Court issued its decision in *AMG Capital*. FTC Opp.
at 14; Rec. Opp. at 14-15.

Wells Fargo did not have a basis to intervene until both: (1) the Supreme
Court's April 2021 decision finding the FTC lacked authority to obtain equitable
monetary relief under Section 13(b) of the FTC Act, *and* (2) the Receiver's lawsuit
against it in July 2021 seeking to prospectively recover monetary judgments that
were awarded as part of the underlying Section 13(b) proceedings notwithstanding
*AMG Capital*. It was only at this juncture that an actionable dispute warranting
intervention arose. Given this recent material change in circumstance, it is
appropriate for Wells Fargo to file its intervention motion at this time. *Perry v.
Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("An applicant as

of right must…have a significantly protectable interest") (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

Furthermore, the FTC's position that Wells Fargo should have intervened as early as October 2019 is contradicted by its own argument that Wells Fargo lacks standing to intervene as this juncture. FTC Opp. at 8. In support of its standing argument, the FTC argues Wells Fargo's injury is far too speculative to confer standing to intervene, as it is not certain that it will have to pay a monetary judgment and litigation costs in the action against the Receiver. *Id.* If Wells Fargo purportedly lacks standing to intervene at this stage, it defies logic as to how it would have been able to intervene in October 2019, as the FTC and Receiver claim it ought to have.

The FTC and Receiver cite *Zurixx* and *Noland* for the proposition that a motion to intervene based on *AMG Capital* is insufficient. Rec. Opp. at 10, 16, 17; FTC Opp. at 6, 18. *Zurixx* and *Noland* are factually and legally inapposite. The proposed intervenors in *Zurixx* and *Noland* sought to intervene on the grounds that the *AMG Capital* decision created their respective interests. However, both of those courts noted that the proposed intervenors' protected interests were present months before the *AMG Capital* decision was issued. In *Zurixx*, the proposed intervenors argued the underlying litigation disrupted their access to defendant's resources and services. *FTC v. Zurixx, LLC*, No. 2:19-CV-00713-DK-DAO, 2021 WL 3510804, at *2 (D. Utah Aug. 10, 2021). The Court found the proposed intervenors' interests arose when the receiver suspended the defendant's operations, and so a motion seeking to intervene 18 months thereafter was untimely. *Id.* at *14. Since the proposed intervenors' protected interest arose well before *AMG Capital* was decided, the intervenors could not rely on that decision as basis for their intervention motion. *Id.* In *Noland*, the proposed intervenors filed a renewed motion to intervene based on *AMG Capital* after their initial intervention motion was found untimely. *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 3290461, at *3 (D. Ariz. Aug. 2, 2021). The *Noland* court held the decision in *AMG Capital* did not cure the

7

untimeliness plaguing the proposed intervenors' first motion to intervene. *Id.* at \*3. In both *Zurixx* and *Noland, AMG Capital* was unrelated to the proposed intervenors' protected interest or discovery thereof. By contrast, Wells Fargo's protected interest in the underlying litigation did not arise until after the Receiver sued Wells Fargo and the Supreme Court decided *AMG Capital,* affecting the viability of the orders allowing the Receiver to pursue litigation against Wells Fargo. Wells Fargo sought to intervene shortly after those events.

### c.   *Intervening Within Four-Months Does Not Warrant a Finding of Untimeliness*

The FTC and the Receiver argue Wells Fargo could also have intervened after July 8, 2021, the date the Receiver filed his complaint, or after July 23, 2021, the date the Receiver filed a motion to extend the receivership deadline in *Apex*, and that Wells Fargo's filing to intervene four months later is untimely. These arguments are unavailing because there was good reason Wells Fargo needed the time before filing its Motion.

Wells Fargo took the necessary time to investigate and assess the strengths of its arguments in connection with this intervention. As part of this process, Wells Fargo discussed the scope of the issues with the FTC, further investigated the issues raised by the agency, and modified the scope of this intervention request. The Court should not fault Wells Fargo for conferring with the FTC and Receiver in an effort to resolve issues, considering the issues raised by the FTC, and being judicious in seeking intervention.

In arguing Wells Fargo's motion is untimely because a mere four months passed after the Receiver's complaint was filed, the Receiver relies on non-binding and out-of-circuit authority. Rec. Opp. at 11, 13. In doing so, the Receiver ignores Ninth Circuit cases finding intervention timely even though the moving party knew of its protectable interest for more than the four months at issue here. *See e.g. Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) (granting intervention even though the

8

action commenced two years prior); *U.S. v. Oregon*, 745 F.2d 550, 551-52 (9th Cir. 1984) (finding district court abused its discretion in denying intervention given a change of circumstance even though the case began 15 years earlier); *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-CV-06441-JST, 2013 WL 6139713, at *3 (N.D. Cal. Nov. 21, 2013) (finding the seven-month delay after discovering interests affected "not extraordinary" and granting motion to intervene); *Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR, 2016 WL 7494297, at *2 (E.D. Wash. Oct. 14, 2016) (granting intervention even though the action commenced four years prior because a Washington State Supreme Court decision was a change of circumstance that for the first time concretely threatened to interfere with the intervenors' interests). A "delay" of four months in no way prejudiced other parties as nothing had transpired in the case following July 2021. Therefore, it makes no difference to the other parties if Wells Fargo intervened in July 2021 or November 2021—particularly considering the FTC and Receiver claim the case is closed.

Further, there was no "strategic" advantage related to the timing when Wells Fargo filed its Motion. Rec. Opp. at 18-19. The Receiver complains that Wells Fargo filed this Motion to Intervene after the motion to dismiss briefing was completed in the separate civil action it filed against Wells Fargo, and that the motion to dismiss was somehow part of Wells Fargo's tactical motivation. However, had Wells Fargo filed its Motion to Intervene the same day as its motion to dismiss the civil action, Wells Fargo suspects the Receiver would have complained about that too. Additionally, the Receiver's argument that Wells Fargo is "forc[ing] the Receiver to expend Estate resources litigating two motions, across two separate actions, in addition to pursuing his case against Wells Fargo" [Rec. Opp. at 20] is unavailing. This Court granted the Receiver's request to engage contingency counsel so that the receivership estate's funds would not be used. Dkts. 136-1 (Receiver requesting permission to engage contingency counsel to "shift the risk away from the Receivership Estate"); 142 (order authorizing Receiver to engage

contingency counsel). As explained throughout this brief, the collateral attack doctrine requires Wells Fargo to challenge this Court's orders here, where the order was issued.

The Receiver cites *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, for the proposition that a two-and-a-half-month delay was unreasonable. 584 F.3d 1, 8-10 (1st Cir. 2009). However, in *R & G Mortg. Corp*, the Court found the proposed intervenors were aware, before the consummation of the settlement, but did nothing, instead they sought to disrupt the settlements after they were finalized causing disruption and harm to the original parties. Similarly, in *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992), the proposed intervention would have prejudiced the parties who had spent significant amounts of time, money and effort to negotiate settlement terms embodied in the final judgment where the proposed intervenors were fully aware of the potential hazards and likely consequences of inaction three months prior but failed to act. *Id.* In contrast, Wells Fargo does not seek to disturb the underlying judgments against Defendants and solely seeks to address the issue of the Receiver's authority to pursue monetary damages against the bank.[2]

---

[2] The Receiver also cites *Nat'l Ass'n for Advancement of Colored People v. New York*, for the proposition that an applicant who procrastinated for 18 days was untimely. 413 U.S. 345, 367-68 (1973). But that case is factually inapposite since the motion to intervene was denied because intervention "possessed the potential for seriously disrupting the State's electoral process" and would jeopardize the impending primary elections for Assembly, Senate, and Congressional elections as well Democratic National Convention delegates. *Id.* at 363, 369. *Lewis v. First Am. Title Ins. Co.*, fares not better since there the court denied a motion to intervene because the proposed intervenors conceded they had tactically decided not to proceed in that court earlier No. 1:06-CV-478-EJF-LMB, 2010 WL 3735485 (D. Idaho Aug. 5, 2010) (proposed intervenors sought to proceed in Michigan first as a tactical choice and only sought intervention after the Michigan plaintiff claims were dismissed).

### iii. Wells Fargo Could Not Have Challenged the Receiver's Authority to Pursue Monetary Damages in the Receiver's Action

The Receiver argues Wells Fargo should have challenged the Receiver's authority to seek monetary damages when it filed its motion to dismiss in the Receiver's case and speculates that Wells Fargo's decision to wait to pursue intervention was motivated by "some tactical advantage in refraining from diligently pursuing intervention" and to seek intervention in the instant matter before the *Apex* matter. Rec. Opp. at 13. But if Wells Fargo had asked the Court to dismiss the Receiver's action based on the *AMG Capital* decision, that effort would have amounted to an impermissible collateral attack. *Rein v. Providian Fin. Corp.,* 270 F.3d 895, 902 (9th Cir. 2001) (the "collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts."). Wells Fargo had no option but to intervene in this action.

### (2) The FTC and the Receiver Will Not Suffer Prejudice as a Result of Wells Fargo's Motion

Contrary to the FTC and Receiver's arguments, no party will suffer prejudice as a result of Wells Fargo's intervention into this case. "[T]he only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult.'" *Scholl v. Mnuchin*, No. 20-CV-05309-PJH, 2021 WL 84487, at *4 (N.D. Cal. Jan. 11, 2021) (citing *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016)).

As explained throughout this Reply, Wells Fargo promptly brought its motion to intervene following the issuance of *AMG Capital* and the Receiver's filing of the Wells Fargo Litigation.  Neither the FTC nor Receiver identify any prejudice flowing from a failure to intervene before *AMG Capital* was decided. Instead they

11

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

focus on arguments unrelated to the timing of Wells Fargo's motion to intervene following its discovery.

The Receiver argues Wells Fargo's intervention would significantly prejudice him because: (1) Wells Fargo could have raised its challenges in the Wells Fargo Litigation, (2) the Motion burdens two separate District Courts with motions to intervene, and (3) forces the Receivership to extend estate resources litigating two motions in two separate actions in addition to his civil litigation against Wells Fargo. Rec. Opp. at 20. The Receiver's arguments ignore the collateral attack doctrine. Had Wells Fargo attempted to challenge the viability of the order authorizing the Receiver to sue it based upon *AMG Capital*, the Receiver would have argued—rightly—that it was an impermissible collateral attack on a judgment. Wells Fargo chose to bring this Motion because it is the proper vehicle for raising its arguments concerning the scope of the Receiver's authority.

Further, the Receiver would have had to respond to Wells Fargo's arguments regarding the limits of his authority *regardless* of whether those arguments were raised in a motion to dismiss or in this Motion. Put differently, it would have made no difference to the Receiver in terms of time and expense in addressing Wells Fargo's arguments because the Receiver would have had to address Wells Fargo's arguments regarding the limits of the Receiver's authority in any event—either at this juncture or in the Wells Fargo Litigation (notwithstanding the collateral attack doctrine) and so the professed prejudice does not exist.

Separately, the FTC argues it would be prejudiced because: (1) the case has been concluded and the FTC has obtained final judgments; (2) it would force the FTC to litigate claims that Wells Fargo could have raised earlier; and (3) the FTC would be forced to engage in duplicative litigation to amend the judgments which would also have delay and threaten redress for defrauded customers. FTC Opp. at 16. The FTC's first argument falls flat because Wells Fargo is not challenging the Final Stipulated Judgments except as applied to Wells Fargo or seeking to unravel

12

the agreements made between the FTC and the Defendants. As Wells Fargo made clear in its Motion, it only seeks to challenge the order affecting the Receiver's ability to pursue a monetary judgment against Wells Fargo. Indeed, if Wells Fargo were successful in challenging the Receiver's authority to pursue recovery of the monetary judgment against it, there would be no impact to the FTC's ability to enforce the Final Stipulated Judgments against the Defendants who settled. Second, Wells Fargo could not have moved to intervene earlier. *Cf.* FTC Opp. at 8-9 (FTC argues Wells Fargo lacks standing at this juncture because its injury is too speculative.). If Wells Fargo had moved to intervene before *AMG Capital* was decided or before the Receiver filed the action against Wells Fargo, the FTC's standing argument may have had merit. Any resources expended addressing this motion are the result of the FTC having obtained unlawful orders and therefore any resulting hardships cannot be deemed unfair prejudice to the FTC or the Receiver. Wells Fargo's intervention at this juncture, for a limited purpose, has no bearing on what the FTC should have done, but did not do, earlier in this case. Any effort needed to correct the record is a result of the FTC's failure to properly prosecute this case. Any cause for re-opening closed issues will be the result of the FTC's new "alternate" path argument for recovery under ROSCA, despite no existing record in the case establishing ROSCA violations or damages.

To the extent the FTC predicates its prejudice argument on the fact that it would be precluded from pursuing monetary damages against Wells Fargo, such an argument cannot stand. As stated at length above, the Supreme Court has since clarified that Section 13(b) is an impermissible avenue for the FTC to recover monetary damages against the bank. Thus, any attempt by the FTC, through the Receiver and this Court, to make an end-run around the FTC Act by pursuing a monetary judgment against Wells Fargo cannot amount to prejudice.

### (3)    *Wells Fargo Has Established a Protectable Interest and That Its Interests Cannot and Will Not Be Adequately Protected*

While the Receiver correctly quotes Wells Fargo's protectable interest as "not having to defend itself against litigation that this Court authorized based on an invalidated legal principle," he mischaracterizes this by narrowing the interest to simply a "right not to be sued," which sidesteps the crux of the issue here. Rec. Opp. at 21. Wells Fargo's protectable interest is not simply the "right not to be sued," but its right not to have an unlawful order applied and enforced against it. As explained in Wells Fargo's Motion, Wells Fargo seeks to challenge the order permitting the Receiver to pursue litigation against Wells Fargo for more than $160 million in monetary damages that this Court ordered pursuant to Section 13(b) and the Supreme Court has since clarified is an impermissible avenue for the FTC to recover monetary damages. Accordingly, there is no question Wells Fargo has a protectable interest in ***not*** having unlawful conduct pursued against it by the government and sanctioned by this Court.[3]

The FTC argues Wells Fargo does not have a significantly protectable interest here because its injury is too speculative to confer standing and a favorable decision would not redress its injury in fact. FTC Opp. at 19 (incorporating FTC Opp. Section II). Yet in the same brief, the FTC contends Wells Fargo should have intervened in 2019 because it somehow had standing and a protectable interest then (but not now). *Id*. at 12-15. The FTC incorporates its same merit-based arguments to argue that Wells Fargo does not have a protectable interest because it can salvage

---

[3]With the Receiver and FTC's new "alternate" theory of recovery under ROSCA, Wells Fargo has a protectable interest in ***not*** having an unlawful order pursued or enforced against it: (i) for rule violations under ROSCA, which violations have not been established in this case, and (ii) for recovery of damages for unestablished rule violations that grossly exceed the monetary damages permitted for ROSCA violations. Furthermore, because Wells Fargo's protectable interest arises from the order issued by this Court, it is appropriate for Wells Fargo to intervene in this case as a matter of right. Due to the collateral attack doctrine, as described in Section III.D.2, *infra,* this is Wells Fargo's ***only*** forum to challenge the order.

14

the judgments through Section 19 or ROSCA, and that *AMG Capital* does not alter

anything because it only changed one remedy available to the FTC under the FTC

Act and thus can have no impact on the ability of a receiver to pursue claims against

a bank outside of the FTC Act.[4] *Id*. at 19-20.

Wells Fargo's harm is not the speculative economic harm that may result

from the litigation. The FTC cites to a district-level opinion to support its claim that

Wells Fargo does not have standing based upon litigation costs. FTC Opp. at 9, 17

(citing *San Diego Unified Port Dist. v. Monsanto*).[5] But in *Monsanto*, the court

found that the defendant could not manufacture standing predicated on litigation

costs by bringing counterclaims and speculative potential liability. *San Diego*

*Unified Port Dist. v. Monsanto Co*., 309 F. Supp. 3d 854, 865-868 (S.D. Cal. 2018)

("An organization suing on its own behalf . . . cannot manufacture the injury by

incurring litigation costs or simply choosing to spend money fixing a problem that

otherwise would not affect the organization at all."). Indeed, litigation expenses can

confer Article III standing where the litigation is not manufactured to create

---

[4] Wells Fargo has established Article III standing to intervene. To have standing, a party must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 665 (9th Cir. 2021) (standing requires injury to an interest that the law protects). A litigant must have a colorable claim to satisfy Article III. *Id*. at 664-665 ("Whether a party has sufficient statutory or otherwise legal basis for their claims is irrelevant at this threshold [stage analyzing standing]"); *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal...."). Here, the FTC only challenges the injury and redressability factors, but Wells Fargo has satisfied both. FTC Opp. at 8-10. As expanded upon in detail throughout the opening brief and in this Reply, Wells Fargo has established that it (1) has suffered an injury resulting from the unlawful order permitting the Receiver to pursue litigation against it, as well as the resulting reputational harm and litigation costs incurred from this lawsuit; and (2) this Court has the authority to provide full or partial redress to Wells Fargo by correcting the unlawful order, which would cure the due process deficiencies and extinguish entirely, or in part, the basis for the Receiver's litigation against it, while also lessening litigation costs and repairing reputational harm. See Section I.B.3 and 4.

[5] The FTC also cites to *Friends of the Earth v. Sanderson Farms, Inc.,* 992 F.3d 854, 866-867 (S.D. Cal. 2018), but it is inapposite because it deals with organizational standing.

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

standing. *Nnebe v. Daus,* 644 F.3d 147, 157 (2d Cir. 2011) (holding that organization's standing was not "manufactured" where organization suffered injury as a result of litigation brought against one of its members); *see also Project Sentinel v. Evergreen Ridge Apartments*, 40 F. Supp. 2d 1136, 1140 (N.D. Cal. 1999) (litigation expenses that are a secondary manifestation of the primary injury inflicted by the defendant's practices confers Article III standing); *Havens Realty Corp v. Coleman*, 455 U.S. 363, 379 (1982) (drain on an organization's resources to counteract the effect of defendant's allegedly illegal practices on the organization's services confers Article III standing). Here, Wells Fargo is not attempting to manufacture standing out of the litigation costs it will incur as the result of the Wells Fargo Litigation. Rather, Wells Fargo's injury here is the unlawful order permitting the Receiver to pursue litigation against Wells Fargo and the resulting reputational harm and litigation costs foisted upon it as it is being forced to defend itself against these actions – all of which Wells Fargo has already suffered as the result of the Receiver's filing of the Wells Fargo Litigation. *See* Mot. at 11, 16; *see also TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2200 (2021) ("Central to assessing concreteness [for Article III standing] is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including [] reputational harm.").

Moreover, despite the FTC's claim to the contrary, Wells Fargo's injury *can* be redressed by this Court by vacating the order permitting the Receiver to engage counsel and pursue litigation against Wells Fargo. The FTC's argument assumes it can recover ROSCA damages *without* charging Section 19, *without* establishing ROSCA rule violations, and *in gross excess* of the permissible recovery. *See* Section II.D. These are issues that appropriately should be resolved by this Court. Indeed, Wells Fargo is barred by the collateral attack doctrine from challenging this Court's order and the FTC's arguments in another case and denial to intervene here thereby

impermissibly extinguishes Wells Fargo's due process rights. *See* Section II.B.ii, *supra.* Wells Fargo's injury— the Receiver's authority to pursue litigation against it under an invalidated legal principle—can be redressed only by an order from this Court vacating the order empowering the Receiver to seek monetary damages against Wells Fargo. Accordingly, Wells Fargo has adequately established Article III standing to intervene in this case.

### (4)   *Wells Fargo Has Adequately Established That Its Interests Will Be Impaired by Disposition of This Case*

Looking at the third factor, Wells Fargo can only protect its interest through intervention. The FTC and Receiver claim Wells Fargo can make these arguments in the Wells Fargo Litigation. Rec. Opp. at 28; FTC Opp. at 21. Doing so, however, would run afoul of the collateral attack doctrine which "precludes litigants from collaterally attacking the judgments of other courts." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995)). The United States Supreme Court made clear: "[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its discretion are to be respected." *Celotex*, 514 U.S. at 313 (quoting *Walker v. Birmingham*, 388 U.S. 307, 314 (1967) (quotations omitted).

The FTC also claims Wells Fargo cannot meet this factor because this case is closed and there is no "future disposition" that could affect Wells Fargo and the Corporate Defendants could still sue Wells Fargo. FTC Opp. at 20-21. But the Receiver is relying *upon this Court's order* to bring the Wells Fargo Litigation—the future disposition is when the Court revokes that authority. The Corporate Defendants' ability to bring the same or similar claims against Wells Fargo is of no moment—the FTC's position that some entity could later attempt to sue Wells Fargo (on what grounds is unclear) is not a reason why ***this*** Court should continue to enforce an unlawful order. Absent intervention, the status quo will remain and the

17

Receiver, despite being empowered based on an invalidated avenue for recovery of monetary damages under Section 13(b), will remain unchecked in his now unlawful efforts to secure redress under Section 13(b).

### C.   Wells Fargo Has Met Its Burden for Permissive Intervention

Wells Fargo satisfies the three elements of permissive intervention as well since: (1) this motion is timely; (2) common questions of law or fact shared with the main action exists; and (3) an independent basis for the court to exercise jurisdiction over its claims is present. Fed. R. Civ. P. 24(b).

As to the first requirement, the motion is timely for the same reasons set forth above. *Infra* Section III.C. Specifically, Wells Fargo acted quickly to intervene once the Receiver brought its action against Wells Fargo in July 2021.

The FTC and the Receiver correctly point out that the timeliness element for permissive intervention is analyzed "more strictly than…with intervention as of right." Receiver Opp. at 24; FTC Opp. at 23-24. This includes, in addition to the three permissive intervention factors, "judicial economy concerns regarding the multiplication of proceedings." Receiver Opp. at 24. The Receiver reasons that "Wells Fargo already has a forum to raise these issues: the Receiver's case against it" and that intervention would result in a "multiplication of proceedings" thereby burdening this Court. *Id.* This is simply not so. As set forth above, Wells Fargo could not raise these issues in the Receiver's action against it as doing so would amount to a collateral attack. Further still, permitting Wells Fargo to intervene in this case would not burden this Court because this case is still administratively open for the purpose of determining the Receiver's authority to prospectively seek recovery of a monetary judgment against Wells Fargo following the decision in *AMG Capital*.

The FTC argues Wells Fargo offers "no reason for waiting 4-7 months to intervene under its theory of timeliness, and no adequate one for the 24 months

since the Receiver moved to sue Wells Fargo." FTC Opp. at 24. As discussed above, Wells Fargo did not unreasonably delay moving to intervene. Specifically, it required time to meet and confer and assess the strengths of its intervention arguments. In August 2021, Wells Fargo conferred with the FTC and the Receiver about its plans to intervene in this action to challenge the order authorizing the Receiver to sue Wells Fargo. Dkt 168-1 at ¶ 8. Following the meet and confer process, Wells Fargo thoughtfully assessed the arguments advanced during the meet and confer and narrowed its request to seek redress of the order permitting the Receiver to engage contingency counsel and pursue litigation against Wells Fargo.

Wells Fargo also easily satisfies the second requirement given the multitude of common issue and facts. *See* Mot. at 21, n.11. Indeed, the Receiver conceded this in filing his notice of related case with the Complaint in the Wells Fargo Litigation. Notice of Related Case in Wells Fargo Litigation, RJN, Ex. D at 2 (Receiver "brings this action against the Defendants for conduct arising out of the same underlying facts at issue in the foregoing lawsuits, including, inter alia, Defendants alleged aiding and abetting of the fraudulent schemes at issue therein."). Further, a finding on this same issue was made in assigning the Wells Fargo Litigation to this Court on the basis of common fact and legal questions. *Id.,* RJN, Ex. D at 2. Indeed, neither the FTC nor the Receiver contest this point. *See generally* FTC Opp.; Rec. Opp.

As to the third requirement, allowing Wells Fargo to intervene will not unnecessarily expand this Court's jurisdiction as this Court expressly retained jurisdiction over the Receivership and motions relating to its prior orders and judgments.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, and the reasons included in the Motion to Intervene and supporting papers, this Court should grant Wells Fargo's motion for intervention.

DATED: January 10, 2022          Respectfully submitted,

                                 **MCGUIREWOODS LLP**


                                 */s/ Alicia A. Baiardo*
                                 David C. Powell, Esq.
                                 Kevin M. Lally, Esq.
                                 Alicia A. Baiardo, Esq.

                                 *Counsel for Proposed Intervenors*
                                 *Wells Fargo & Company and Wells Fargo*
                                 *Bank, N.A.*

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2022, I electronically filed the foregoing document entitled with the Clerk of the Court for the United States District Court, Southern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system. Any counsel of record who has not consented to or registered for electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile, and/or overnight delivery.

By: */s/ Alicia A. Baiardo*
Alicia A. Baiardo